OHIO BELL TELEPHONE COMPANY, APPELLEE, *v.* LEVIN,

TAX COMMR., APPELLANT.

[Cite as *Ohio Bell Tel. Co. v. Levin*, 124 Ohio St.3d 211, 2009-Ohio-6189.]

*Public utilities — Taxation — R.C. 5727.11 — Notice of appeal to Board of Tax Appeals — Notice of appeal must specify errors complained of in Tax Commissioner's final determination — General statements not specifying exact nature of error complained of do not confer jurisdiction on Board of Tax Appeals — Decision reversed.*

(No. 2007-1807 — Submitted July 14, 2009 — Decided December 3, 2009.)

APPEAL from the Board of Tax Appeals, No. 2005-K-202.

_____

**CUPP, J.**

{¶ 1} The Tax Commissioner contends that the Board of Tax Appeals ("BTA") lacked jurisdiction to reduce his valuation of certain personal property of The Ohio Bell Telephone Company ("Ohio Bell"). In modifying the commissioner's valuation, the BTA relied on a theory of error that was not specified in Ohio Bell's notice of appeal to the BTA. Therefore, we agree that the BTA lacked jurisdiction, and we reverse the decision of the BTA and reinstate the determination of the commissioner.

**I**

{¶ 2} Pursuant to statute, public utilities must pay property tax. The property tax is an ad valorem tax; the tax rate is applied to the taxable percentage of the true value of the utility's personal property. R.C. 5727.06, 5727.10, 5727.11, and 5727.111. To impose the tax, the commissioner must first determine the value of the utility's property. R.C. 5727.10. That value forms the

base for the ultimate determination of the amount of the tax.[1]  R.C. 5727.111. This case involves a dispute over true value.

{¶ 3}  In the spring of 2003, Ohio Bell submitted its annual public-utility property report for the 2003 tax year.  That fall, the commissioner issued his preliminary assessment. Using the method required by R.C. 5727.11(A), which takes historical cost as the starting point and then subtracts industry-specific depreciation allowances developed by the commissioner, the commissioner determined that the true value of Ohio Bell's property was $2,466,085,652.

{¶ 4}  Believing that this valuation was too high, Ohio Bell filed a petition for reassessment under R.C. 5727.47.  The petition contained two objections, but only one is pertinent here:

{¶ 5}  "The Tax Commissioner's determination of the true value of all taxable property of [Ohio Bell] does not reflect its true value in money as required by Ohio law.  The Tax Commissioner's determination is erroneous, unjust and unreasonable because, *inter alia*, it overstates both costs and service lives and utilizes a method that does not reasonably reflect true value.  Correction of the Tax Commissioner's errors results in a total reduction in true value of $919,726,091 and a reduction in taxable value of $351,611,285."

{¶ 6}  In support of its petition for reassessment, Ohio Bell submitted a "Depreciated Replacement Cost Study."  This study—consistent with Ohio Bell's objection that the commissioner had "overstate[d] both costs and service lives"— sought to establish a new cost figure (using "replacement cost new") and new depreciation figures (using service lives that "better reflect[] the true loss of service value in the company's assets"). The commissioner denied the petition,

---

1.  After the determination of true value, which is usually the critical issue in property-tax cases, the assessment also computes the taxable portion of true value using percentages supplied by R.C. 5727.111.  Then, under R.C. 5727.15, the taxable value is apportioned to those taxing districts in which the utility's property is located.  Once the assessment becomes final, R.C. 5727.23 requires each county's auditor to list the apportioned taxable value for collection using the applicable local rate.

finding that Ohio Bell had not established "a more accurate gauge of the true value of [its] property than the assessed value."

**{¶ 7}** Ohio Bell filed a notice of appeal with the BTA. The notice, like the petition, contained two specifications of error, but only the second is pertinent here:

**{¶ 8}** "[T]he cost less depreciation method utilized by the Tax Commissioner does not reflect the true value in money of [Ohio Bell's] taxable property as required by Ohio law. The Tax Commissioner's determination is erroneous, unjust and unreasonable because, *inter alia*, it overstates both costs and service lives and utilizes a method that does not reasonably reflect true value."

**{¶ 9}** In support, Ohio Bell submitted the same valuation study it had presented to the commissioner. After Ohio Bell filed its notice of appeal but before its BTA hearing, the BTA decided another case involving a different telephone company (Cincinnati Bell), in which it rejected a valuation study similar to the one Ohio Bell had prepared in its case. See *Cincinnati Bell Tel. Co. v. Zaino* (June 10, 2005), BTA Nos. 2003-K-765 and 2003-K-1612. In that decision, the BTA observed that the valuation study was not an acceptable alternative valuation method within the meaning of R.C. 5727.11(A), which permits the use of "another method of valuation" if the statutory method "will not result in the determination of true value." The BTA concluded that the valuation study was not acceptable, because it was not in fact a valuation. The BTA contrasted Cincinnati Bell's study with the unit appraisal presented in *Texas E. Transm. Corp. v. Tracy* (1997), 78 Ohio St.3d 83, 676 N.E.2d 523. In a unit appraisal, a professional appraiser determines the "unit" to be appraised (such as the public utility's operating properties), estimates the market value of that unit, and allocates an appropriate portion of the unit to the taxing jurisdiction. See id. at 83-84, 676 N.E.2d 523. Because Cincinnati Bell had not presented an acceptable alternative valuation method, the BTA proceeded to address whether

Cincinnati Bell had demonstrated "through competent and probative evidence [that] the application of the commissioner's prescribed rates creates an unjust or unreasonable result, [and that] reliance upon the statutory method is inappropriate." Concluding that Cincinnati Bell had failed to make such a showing, the BTA affirmed the final determination of the Tax Commissioner.

{¶ 10} After the BTA rejected Cincinnati Bell's valuation study, Ohio Bell abandoned its own. Instead of presenting the replacement-cost and service-life studies that Ohio Bell had presented to the commissioner, it filed a motion for a continuance. The motion itself is not contained in the record, but according to a BTA interim order, Ohio Bell "indicated that in light of [the BTA's] decision in *Cincinnati Bell Tel. Co. v. Zaino* * * *, which rejected a valuation study similar to that upon which [Ohio Bell] apparently * * * intended to rely," the company had engaged an appraiser "to prepare an appraisal of its public utility personal property."

{¶ 11} The commissioner filed a motion to exclude the proposed appraisal, arguing that the BTA's jurisdiction extended only to "matters decided by the Commissioner that have been specified as error by the taxpayer" and that neither condition was satisfied by Ohio Bell. The BTA denied the motion and allowed the testimony. It held that Ohio Bell's petition for reassessment and notice of appeal contained an adequate specification of error, as "the commissioner and this board were clearly put on notice that appellant was objecting to the application of the cost less depreciation method typically employed by the commissioner in valuing its public utility property." The notice pleadings, according to the BTA, are required to provide notice of claimed error, but did not need to provide "all of the *evidence*" in support of that claim. (Emphasis sic.)

{¶ 12} Accordingly, at the BTA hearing, Ohio Bell presented the unit appraisal and the testimony of the appraiser who had prepared it. In his report,

the appraiser explained that he had employed "three indicators or approaches to value"—based on cost, income, and comparable sales—to "make a judgment determination of the market value" of Ohio Bell's public-utility property. Giving the most weight and emphasis to the income approach, the appraiser concluded that the true value of Ohio Bell's property was $1,672,518,399, over $790 million less than the commissioner's original valuation of $2,466,085,652.

{¶ 13} The BTA agreed with the appraiser. After making adjustments to reflect Ohio Bell's eventual abandonment of a separate issue, the BTA set the true value of Ohio Bell's public-utility property at $1,702,157,675, over $760 million less than the commissioner's original valuation.

{¶ 14} The commissioner appealed, and we now reverse.

## II

{¶ 15} The commissioner raises a number of arguments assailing the BTA's decision; among them, he asserts that "Ohio Bell failed to confer jurisdiction on the BTA to consider its appraisal-based challenge because Ohio Bell's notice of appeal failed to specify any error in the Commissioner's final determination relating to that appraisal challenge." We agree. Because of our disposition of this issue, it is unnecessary to address the commissioner's other challenges.

### A

{¶ 16} For an appeal to the BTA from a final determination of the tax commissioner, R.C. 5717.02 requires the notice of appeal to "specify the errors therein complained of." This requirement is jurisdictional. E.g., *Newman v. Levin*, 120 Ohio St.3d 127, 2008-Ohio-5202, 896 N.E.2d 995, ¶ 27 (the notice of appeal "never identified the issue * * * in his specifications of error to the BTA, and therefore the BTA lacked jurisdiction to consider that issue. As a result, we are without jurisdiction to consider it"). The specificity requirement is also "stringent." *Brown v. Levin*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d

35, ¶ 18. Thus, a notice of appeal " 'must explicitly and precisely recite the errors contained in the Tax Commissioner's final determination.' " *Newman* at ¶ 26, quoting *Cousino Constr. Co. v. Wilkins*, 108 Ohio St.3d 90, 2006-Ohio-162, 840 N.E.2d 1065, ¶ 41.

{¶ 17} We have made clear that a specification of error must not be so generic that it fails to set the case apart from any other case involving the same tax. *Brown* at ¶ 22 (holding that the notice was fatally defective when the claimed error "might * * * have been raised in any *income tax* case in Ohio" (emphasis sic)); *Castle Aviation, Inc. v. Wilkins*, 109 Ohio St.3d 290, 2006-Ohio-2420, 847 N.E.2d 420, ¶ 41 ("The wording of Castle's constitutional claim is so general that it could be used in almost every use tax case"); *Queen City Valves, Inc. v. Peck* (1954), 161 Ohio St. 579, 583, 53 O.O. 430, 120 N.E.2d 310 (an assertion that "might be advanced in nearly any case" is not specific under R.C. 5717.02).

{¶ 18} Applying these standards, the BTA lacked jurisdiction to modify the commissioner's valuation of Ohio Bell's property on the basis of a unit appraisal.

*B*

{¶ 19} As pointed out earlier, Ohio Bell's notice of appeal to the BTA contained one specification of error pertinent here:

{¶ 20} "[T]he cost less depreciation method utilized by the Tax Commissioner does not reflect the true value in money of [Ohio Bell's] taxable property as required by Ohio law. The Tax Commissioner's determination is erroneous, unjust and unreasonable because, *inter alia*, it overstates both costs and service lives and utilizes a method that does not reasonably reflect true value."

{¶ 21} This paragraph could be read as stating two errors: one is that the determination "overstates both costs and service lives"; the other is that the "method" used by the commissioner did "not reasonably reflect true value."

1

{¶ 22} The statement that the commissioner's determination "overstates both costs and service lives" did not preserve the theory that a unit appraisal establishes true value, and Ohio Bell does not contend otherwise. This statement basically describes the theory that Ohio Bell presented to the commissioner but not to the BTA: namely, the theory that certain variables in the statutory method (that is, cost and service lives) had been set too high. This language would have put the commissioner on notice that Ohio Bell intended to present the same theory to the BTA.

{¶ 23} But this language gave no hint that the commissioner erred by not using a unit appraisal to establish true value. Nor did this language mention any of the concepts on which the appraisal's reduction in value was premised: the appraiser's judgment determination of the market value of the property or the income produced by the property. Notably, the appraiser considered but did not place much weight on the "cost approach"—the one valuation method arguably foreshadowed in the notice of appeal to the BTA—but "gave most weight, by far, to the income approach." This shows the fundamental dissimilarity between the valuation theory presented to the commissioner (which was focused on revising the cost and depreciation variables) and the one presented to the BTA (which was focused on an expert appraiser's professional opinion of the *market* value of Ohio Bell's operating properties). See *Texas E. Transm. Corp.*, 78 Ohio St.3d at 86-87, 676 N.E.2d 523 (upholding the BTA's acceptance of a "unit appraisal" as an alternate valuation method to the cost-based statutory method of valuation).

{¶ 24} In short, the assertion that the commissioner "overstate[d] both costs and service lives" did not cover the unit-appraisal issue.

2

{¶ 25} This leaves only the assertions that the method used by the commissioner "does not reflect the true value in money of [Ohio Bell's] taxable property" and "does not reasonably reflect true value." Whereas the previous

statement was too narrow to specify the need for a unit appraisal, these are too broad, and they do not specify any error for purposes of R.C. 5717.02.

**{¶ 26}** It must be kept in mind that the standard against which valuation decisions are measured is "true value." The statute under which this case was litigated requires the commissioner to find "the true value of all taxable property." R.C. 5727.11(A). We have observed that the "ultimate goal" in a case of this sort is "true value." See *Texas E. Transm. Corp.*, 78 Ohio St.3d at 85, 676 N.E.2d 523 (public-utility property-tax case). Accordingly, in making his final determination, the commissioner attempted to establish "the true value" of Ohio Bell's property.

**{¶ 27}** Thus, when Ohio Bell stated in its notice of appeal that the commissioner's method did "not reasonably reflect true value," it essentially claimed that the commissioner's valuation failed to meet the standard without specifying how it fell short. Indeed, Ohio Bell simply restated the ultimate standard and added the word "not." Such a "specification" is so broad that it specifies nothing at all. Innumerable alternate theories of "true value" could have been presented, just as innumerable claims of error could have been raised against the commissioner's determination. While Ohio Bell's specification is broad enough to *encompass* any one of these theories or faults (including the theory actually presented to the BTA), it did not *narrow* the issues in this case in any way. These statements simply register Ohio Bell's general disagreement with the final determination of value—which is little more than what is already evidenced by the existence of the notice of appeal.

**{¶ 28}** This is not enough to meet the requirements of the statute. Specifications of error must be explicit and precise, *Newman*, 120 Ohio St.3d 127, 2008-Ohio-5202, 896 N.E.2d 995, ¶ 26, but the wording of error in this notice is so general that it "might indeed have been raised in any [property] tax case," (emphasis omitted) *Brown*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35, ¶ 22. These statements in no way "tie the facts of the case" to the alleged error by

explaining "how" the commissioner erred in valuing its property. See *Castle Aviation*, 109 Ohio St.3d 290, 2006-Ohio-2420, 847 N.E.2d 420, ¶ 41. And we have rejected notices that did no more than state that some general standard was violated or not satisfied. See id. (notice of appeal that merely stated that the imposition of a tax "violates the Equal Protection Clause" failed the specificity requirement); *Brown*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35, ¶ 21–22 (notice of appeal that merely stated that "the assessment is not supported by a proper application" of the general income-tax statute failed specificity requirement). That is all this portion of Ohio Bell's notice of appeal does; for purposes of R.C. 5717.02, then, it specifies no error at all.

3

{¶ 29} Ohio Bell's only argument in response is that a taxpayer need not provide notice of "the *evidence* used by the taxpayer in support of [its] claim" (emphasis sic), and according to Ohio Bell, that claim was that the statutory method failed to result in true value.

{¶ 30} While it is true that an appellant need not specify the evidence on which it intends to rely, that is irrelevant here—the dispositive issue is whether the error charged to the commissioner and argued before the BTA was specified in the notice of appeal. As discussed above, it was not.

4

{¶ 31} Because no statement in the notice of appeal can be reasonably construed as specifying the error on which the BTA relied in modifying the value of Ohio Bell's property, the BTA lacked jurisdiction to do so. Because the unit appraisal constituted the only factual basis presented to the BTA (Ohio Bell abandoned its earlier valuation study), we reverse the decision of the BTA that it had jurisdiction to consider the unit-appraisal issue. As stated, our disposition of this issue makes it unnecessary to reach the commissioner's other arguments.

*C*

**{¶ 32}** While we have focused on the failings of Ohio Bell's notice of appeal to the BTA, we would briefly note that the flaws in that notice are not merely technical. Ohio Bell's notice did not mention any appraisal-related error, because Ohio Bell had not devised any appraisal-related theory at the time it drafted its notice. The jurisdictional issue here, then, stems from Ohio Bell's failure to present a case based on a unit appraisal to the commissioner, not from an unfortunate choice of words.

**{¶ 33}** Our cases suggest that such a failure to *present* an issue to the commissioner precludes the BTA from taking jurisdiction over that issue—even if the issue is *specified* in the notice of appeal. See, e.g., *CNG Dev. Co. v. Limbach* (1992), 63 Ohio St.3d 28, 32, 584 N.E.2d 1180; see also *DeWeese v. Zaino*, 100 Ohio St.3d 324, 2003-Ohio-6502, 800 N.E.2d 1, ¶ 19–22. We need not decide, however, whether Ohio Bell could have presented a unit-appraisal theory to the BTA if it had specified that theory in all applicable notice pleadings but had not presented a unit appraisal to the commissioner. The notice of appeal, as discussed, did not specify that particular error, and that ground alone requires reversal.

## III

**{¶ 34}** For the foregoing reasons, we reverse the decision of the BTA and reinstate the determination of the commissioner.

Judgment reversed.

MOYER, C.J., and PFEIFER, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

LUNDBERG STRATTON, J., dissents.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 35}** I believe that a remand to the Tax Commissioner is appropriate in light of the intervening case of *Cincinnati Bell Tel. v. Zaino* (June 10, 2005), BTA

Nos. 2003-K-765 and 2003-K-1612, which rejected a valuation study similar to that upon which Ohio Bell relied, instead allowing an appraisal of unit value.

{¶ 36} I also believe that Ohio Bell's appeal provided sufficient notice of the claimed errors to establish jurisdiction and that the valuation study and appraisal went to the method of proof and the evidence presented, not to jurisdiction. The BTA, as the trier of fact, accepted the evidence, pursuant to the method it had already determined acceptable in *Cincinnati Bell*.

{¶ 37} Therefore, I would defer to the expertise of the BTA and would affirm its judgment of the value of Ohio Bell's personal property as $1,702,157,675.

_____

Calfee, Halter & Griswold, L.L.P., James F. Lang, Peter A. Rosato, and Jeffrey J. Lauderdale, for appellee.

Richard Cordray, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellant.

_____