[Cite as *Am. Fiber Sys., Inc. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468.]

AMERICAN FIBER SYSTEMS, INC., APPELLANT, *v*. LEVIN,

TAX COMMR., APPELLEE.

[Cite as *Am. Fiber Sys., Inc. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468.]

*Taxation — Personal property tax — Interexchange companies — "Used in business" pursuant to R.C. 5701.08(A) — Fiber strands and fiber-optic network equipment are used in business, even when the fiber is unlit, when the fiber is held for lease — Taxpayer has the burden of proof — Decision affirmed.*

(No. 2008-1338 — Submitted December 15, 2009 — Decided April 7, 2010.)

APPEAL from the Board of Tax Appeals, No. 2006-B-118.

_____

**PFEIFER, J.**

**{¶ 1}** This is an appeal as of right by appellant, American Fiber Systems, Inc. ("AFS"), from a decision of the Board of Tax Appeals ("BTA"). The BTA's order affirmed the Tax Commissioner's final determination denying AFS's petition for reassessment and affirming a personal-property-tax assessment for tax year 2004.

**{¶ 2}** AFS is an "interexchange telecommunications company" as defined in R.C. 5727.01(H). All interexchange companies must pay an annual ad valorem tax on their personal property. See R.C. 5727.06(A)(1)(c)(i), 5727.111(F)(1), and 5709.01(B)(1). Unless otherwise exempted, all personal property of an interexchange company located in Ohio and used in business is subject to taxation. R.C. 5727.06 and 5709.01(B)(1). In this case, AFS seeks a reduction in the assessed value of its taxable personal property by the percentage of the property that AFS claims is not used in business.

**Facts and Procedural History**

**{¶ 3}** AFS constructed, owns, and operates a 41-mile fiber-optic telecommunications network or "loop" in Cuyahoga County. The network consists of fiber-optic cable, conduit pipes, above-ground poles, and computer-monitoring equipment. The cable itself contains 288 strands of fiber that are bundled together in a sheath. The bundled fiber runs through one conduit pipe throughout the 41-mile loop. In addition, AFS constructed two additional conduit pipes that run through the municipality of Shaker Heights, Ohio. Shaker Heights apparently required AFS to build the extra conduits in order to comply with a city ordinance. These additional conduits do not contain any fiber.

**{¶ 4}** AFS does not use its fiber-optic network to provide telecommunications services directly to its customers. Instead, AFS leases the fiber to telecommunications carriers and other businesses, which provide telecommunications services to their customers. AFS built the fiber network, in part, based on an agreement with Cable and Wireless, a telecommunications-services provider. AFS has an indefeasible right-of-use agreement in which Cable and Wireless agreed to lease some of the fiber. AFS also constructed its network with the view of leasing fiber to local-exchange carriers and other telecommunications providers to serve the excess-capacity needs of these businesses. AFS has been able to lease only 36 of the 288 strands of fiber. The remaining 252 strands have never been "lit," i.e., used to provide telecommunications services.

**{¶ 5}** On March 31, 2004, AFS filed its annual personal-property-tax report for the 2004 tax year. The Tax Commissioner subsequently determined the total true value of AFS's taxable personal property to be $4,925,514, the same amount reported by AFS. The Tax Commissioner then assessed the $4,925,514 true-value amount at the statutory assessment rate of 25 percent to derive a total taxable value of $1,231,380 for AFS's personal property pursuant to R.C. 5727.111(F)(1).

{¶ 6} AFS filed a petition for reassessment, asserting that the total taxable value of its property should be reduced from $1,231,380 to $156,200. AFS noted that 252 of its 288 strands of fiber – or 87.5 percent – have never been lit. Thus, AFS requested that 87.5 percent of the value of its fiber be reduced, arguing that this unlit or "dark fiber" is not "used in business" pursuant to R.C. 5701.08(A). AFS also requested the same 87.5 percent reduction in value for its conduit pipes, above-ground poles, computer-monitoring equipment, and make-ready fees based on the same "not used in business" argument.

{¶ 7} The Tax Commissioner denied AFS's petition for reassessment. The commissioner found that AFS's unlit fiber is used in business pursuant to R.C. 5701.08(A) because AFS built its fiber-optic network to lease fiber to third parties, and the unlit fiber is held for lease, a business use.

{¶ 8} The commissioner also rejected AFS's argument regarding its other equipment. The commissioner found that the conduit, poles, and monitoring equipment were fully taxable because AFS uses this equipment in conjunction with the fiber strands that are lit. In addition, the commissioner denied AFS's request to exempt the make-ready costs, rejecting AFS's contention that these costs were not incurred to build the fiber loop. The commissioner also found that AFS provided only a "rough estimate" of its make-ready costs, and "[s]uch approximations of value are not probative evidence for a deduction from taxable personal property."

{¶ 9} AFS appealed the commissioner's final determination to the BTA. The primary basis of AFS's appeal was that the doctrine of collateral estoppel barred the Tax Commissioner's decision to deny AFS a reduction in value for the 2004 tax year. The Tax Commissioner had granted AFS a reduction in value for the unlit fiber for the 2003 tax year, and AFS argued that the BTA's decision in case No. 2004-K-1222 – which affirmed the 2003 tax year final determination – estopped the commissioner from making a different determination for the 2004

tax year. The BTA rejected the collateral-estoppel claim on two grounds. First, the BTA held that it was precluded from considering the claim because AFS had failed to raise collateral estoppel as an issue in its petition for reassessment. Second, the BTA rejected the collateral-estoppel claim on the merits, finding that collateral estoppel did not apply in this case to the issue of the taxable value of the dark fiber.

{¶ 10} As to whether AFS's personal property was used in business pursuant to R.C. 5701.08(A), the BTA agreed with the Tax Commissioner. According to the BTA, AFS offered no compelling evidence that its dark fiber and other equipment were not used in business. The BTA further noted that AFS waived its hearing before the BTA. As a result, the BTA concluded that it had no evidence before it to determine the proper allocation of costs regarding AFS's request to exempt its unlit fiber and other equipment.

{¶ 11} AFS filed a notice of appeal to this court, raising three propositions of law.

**Standard of Review**

{¶ 12} In reviewing a decision of the BTA, this court determines whether it is "reasonable and lawful." *Summit United Methodist Church v. Kinney* (1983), 7 Ohio St.3d 13, 15, 7 OBR 406, 455 N.E.2d 669. We defer to BTA determinations when the record contains reliable and probative evidence to support the BTA's findings, *Blatt v. Hamilton Cty. Bd. of Revision*, 123 Ohio St.3d 428, 2009-Ohio-5260, 916 N.E.2d 1065, ¶ 14, but we "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. The burden rests on the taxpayer " 'to show in what manner and to what extent * * * 'the commissioner's * * * findings and assessments * * * were faulty and incorrect." *Federated Dept. Stores, Inc., Rike-Kumler Div. v. Lindley* (1983), 5 Ohio St.3d 213, 215, 5 OBR 455, 450 N.E.2d 687.

4

**Analysis**

{¶ 13} AFS raises three primary arguments on appeal. First, AFS claims that collateral estoppel barred the Tax Commissioner's determination in this case. Second, AFS argues that its unlit fiber should not be taxed because it is not used in business pursuant to R.C. 5701.08(A). Finally, AFS contends that it is entitled to a reduction in value on its other equipment based on the percentage of fiber that is not in use. We reject each of these arguments for the following reasons.

*Collateral Estoppel*

{¶ 14} AFS asserts that the BTA erred when it failed to apply the doctrine of collateral estoppel, forcing AFS to relitigate issues in this case that had already been decided by the BTA. In the prior case, the BTA had affirmed the Tax Commissioner's final determination on AFS's property for the 2003 tax year. See *Am. Fiber Sys., Inc. v. Wilkins* (Sept. 16, 2005), BTA No. 2004-K-1222, 2005 WL 2319882. The Tax Commissioner had reduced the taxable value of AFS's unlit fiber for the 2003 tax year, a determination that was not appealed, but he had refused to grant the same reduction for tax year 2004. AFS argues that the BTA's decision affirming the 2003 tax-year assessment barred the Tax Commissioner from making a different determination on AFS's unlit fiber for 2004.

{¶ 15} A taxpayer wishing to challenge a public-utility property-tax assessment by the Tax Commissioner must file a petition for reassessment that "shall indicate" the taxpayer's "objections" to the assessment. R.C. 5727.47(A). We have held that the failure to raise an issue in a petition for reassessment precludes the BTA from taking jurisdiction over that issue – even if the issue was raised in the notice of appeal to the BTA. *CNG Dev. Co. v. Limbach* (1992), 63 Ohio St.3d 28, 32, 584 N.E.2d 1180. See *Ohio Bell Tel. Co. v. Levin*, 124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212, ¶ 28 (specifications of error must be explicit and precise and tie the facts of the case to the alleged error by explaining how the commissioner erred in valuing the property).

{¶ 16} For its part, AFS contends that it preserved the collateral-estoppel issue for appeal by attaching to its petition for reassessment the notice of appeal of the 2003 tax year final determination, case No. 2004-K-1222, and the final determination by the Tax Commissioner for the 2003 tax year.

{¶ 17} To invoke the right to review of a particular error, the taxpayer must set forth that error with specificity in the petition for reassessment. *CNG Dev. Co.*, 63 Ohio St.3d at 32, 584 N.E.2d 1180. We conclude that the specificity requirement was not met in this case.

{¶ 18} First, AFS did not mention the doctrine of collateral estoppel anywhere in its petition for reassessment. In fact, AFS made no claim or argument in its petition that a prior decision by the BTA barred the commissioner from issuing a different assessment for the following tax year.

{¶ 19} Second, AFS's act of attaching the notice of appeal in the earlier case, No. 2004-K-1222, to the reassessment petition did not preserve the collateral-estoppel issue for appeal. R.C. 5727.47(A) provides that "additional objections [to an assessment by the commissioner] may be raised in writing if received by the commissioner prior to the date shown on the final determination." The BTA rendered its decision in case No. 2004-K-1222 over two months before the commissioner rendered his final determination in this matter on November 30, 2005. Thus, AFS had ample time to specify its estoppel issue with the Tax Commissioner. Simply attaching a document without explaining its significance – as AFS did here – does not give the Tax Commissioner notice of the claimed error.

{¶ 20} AFS's attachment of the commissioner's 2003 final determination does not meet the specificity requirement. At best, this document represents nothing beyond AFS's request that it receive the same tax treatment from one year to the next. The burden of pleading and proving the identity of the issues currently presented and the issues previously decided rests on the party asserting

the estoppel. *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 198, 2 OBR 732, 443 N.E.2d 978. Here, AFS cannot prove an identity of the issues because the BTA never considered the issue of whether the unlit fiber was "used in business" in case No. 2004-K-1222. The Tax Commissioner had already granted AFS a reduction in the taxable value of the unlit fiber for the 2003 tax year. Consequently, AFS had no reason to present that issue to the BTA in case No. 2004-K-1222. See *Am. Fiber Sys., Inc. v. Wilkins*, BTA No. 2004-K-1222, 2005 WL 2319882, *1. Thus, even if AFS had preserved the collateral-estoppel issue, the issues involved in the two proceedings were not identical, and the BTA's decision in that earlier case would not preclude the Tax Commissioner from rendering a different assessment as to AFS's unlit fiber for the 2004 tax year.

{¶ 21} AFS also argues that the collateral-estoppel issue was preserved in a letter dated May 11, 2005, in which it specifically requested that the Tax Commissioner reduce its "fiber cost by the 87.5% figure previously approved by the Tax Commissioner." The May 11 letter additionally requested that the Tax Commissioner extend the 2003 reduction in value of the unlit fiber to all of AFS's assets for the 2004 tax year. AFS mentioned the May 11 letter for the first time in its reply brief to this court. AFS is forbidden, however, to raise new arguments in its reply brief. *State ex rel. Colvin v. Brunner,* 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 61.

{¶ 22} To meet the specificity requirement for reassessment petitions in this case, AFS needed to do more than attach copies of the commissioner's final determination from a prior tax year and a notice of appeal to the BTA of that determination; it had to affirmatively claim that collateral estoppel applied to bar the commissioner's assessment. Because AFS did not plead that error with specificity in its petition for reassessment, the BTA did not err in finding that it lacked jurisdiction over the collateral-estoppel issue. Consistent with *CNG Dev.*

*Co.*, 63 Ohio St.3d 28, 584 N.E.2d 1180, the commissioner, the BTA, and this court have no jurisdiction over the collateral-estoppel issue.

*Is AFS's unlit fiber "used in business"?*

{¶ 23} AFS maintains that the Tax Commissioner erred when he assessed the unlit fiber as "inventory." The Tax Commissioner determined that because AFS held the unlit fiber as property available for lease by other businesses rather than using it in its own right, the unlit fiber "has the character of a type of inventory that is used in business by being held for use by other entities."

{¶ 24} AFS argues that the commissioner's characterization of the unlit fiber as inventory has no basis in law because "inventory" is not specifically identified in R.C. 5727.06(A)(1)(c) or defined in R.C. 5701.03. The absence of a statutory definition does not undermine the commissioner's determination; it is well settled that "any term left undefined by statute is to be accorded its common, everyday meaning." *State v. Dorso* (1983), 4 Ohio St.3d 60, 62, 4 OBR 150, 446 N.E.2d 449. AFS has offered no compelling argument or evidence that the commissioner's use of the word "inventory" to describe the unlit fiber was unreasonable.

{¶ 25} AFS also complains that inventory is not addressed in the Guidelines for Filing Ohio Public Utility Tax Reports or in the forms for reporting assets for an interexchange telecommunications company. AFS appears to contend that the commissioner exceeded his authority by characterizing AFS's unlit fiber as inventory. AFS has, however, offered no legal authority for this proposition.

{¶ 26} AFS further claims that it did not report any assets as inventory and that the Tax Commissioner did not classify any of AFS's assets as inventory in his initial assessment. It is beyond cavil that the commissioner is not bound by the taxpayer's listing of personal property in its annual tax reports. The commissioner is not bound by any determinations made in his initial assessments.

*Lang, Fisher & Stashower Advertising, Inc. v. Collins* (1976), 46 Ohio St.2d 285, 286, 75 O.O.2d 330, 347 N.E.2d 538.

{¶ 27} In any case, AFS's focus on the Tax Commissioner's "inventory" reference overlooks that his final determination did not turn on whether the unlit fiber was inventory. Rather, the primary basis for the Tax Commissioner's determination was that the unlit fiber was "used in business" as that term is defined in R.C. 5701.08(A)(1).

{¶ 28} R.C. 5701.08(A) designates four separate classes of personal property considered to be "used in business": (1) "when employed or utilized in connection with ordinary or special operations," (2) "when acquired or held as means or instruments for carrying on the business," (3) "when kept and maintained as a part of a plant capable of operation, whether actually in operation or not," and (4) "when stored or kept on hand as material, parts, products, or merchandise."

{¶ 29} The Tax Commissioner found that AFS's unlit fiber fell into three of the four classes of personal property considered to be used in business under R.C. 5701.08(A). First, the commissioner found that AFS held the unlit fiber for lease. Thus, according to the commissioner, the unlit fiber was used in AFS's "ordinary operations" as personal property available for lease. Second, the commissioner determined that the unlit fiber was "held as means or instruments for carrying on [AFS's leasing] business." And third, the commissioner stated that the unlit fiber was "stored or kept on hand as material, parts, products, or merchandise."

{¶ 30} The only authority offered by AFS on this issue is *United Tel. Co. of Ohio v. Tracy* (1999), 84 Ohio St.3d 506, 705 N.E.2d 679, but AFS failed to include any argument or legal analysis. AFS presumably believes that it is entitled to the same tax treatment as United Telephone, but AFS overlooks the fact that *United Tel.* involved a different kind of business. United Telephone was

a public utility engaged in the business of providing telephone service to businesses and residential customers. See *United Tel. Co. of Ohio v. Limbach* (1994), 71 Ohio St.3d 369, 643 N.E.2d 1129. In contrast, AFS does not provide telecommunications services directly to its customers. Rather, AFS leases fiber-optic cable to telecommunications carriers and other businesses. Thus, contrary to AFS's assertion, the unlit fiber in this case was being used in the business for which it was acquired pursuant to R.C. 5701.08(A). That is, although the unlit fiber was not currently leased and used to provide telecommunications service, AFS was using the unlit fiber in the business for which AFS had acquired it, holding it out for lease by other companies.

{¶ 31} In addition, we conclude that the following evidence supports the Tax Commissioner's determination that the unlit fiber was used in business pursuant to R.C. 5701.08(A). AFS completed construction of its Cuyahoga County fiber-optic telecommunications system, consisting of fiber, conduit pipes, above-ground poles, and computer-monitoring equipment, and placed it in service in 2002. AFS installed additional fiber capacity in Cuyahoga County based on the needs of the market at that time. AFS decided to build a "robust" fiber-optic network so that local-exchange carriers and other telecommunication carriers in need of extra fiber capacity would not have to build their own fiber network.

{¶ 32} Testimony revealed that AFS constructed its fiber-optic system to lease dark-fiber capacity to local exchange carriers and other telecommunications companies. Gary Azzolina, the Director of Project Management for AFS, testified that the Cuyahoga County project was "undertaken primarily to provide * * * dark fiber service," i.e., make unlit fiber available for lease. AFS holds the dark fiber for the purpose of allowing others to use it. AFS's "business motto is [to] provide dark fiber" to customers who are then not required to build their own fiber-optic network. AFS owns the network and leases dark fiber "product" or

"usage" over those fiber strands to other companies, and the customer can lease only what is necessary to carry out its own services.

{¶ 33} Likewise, in a letter to the Department of Taxation, Martin Constable, AFS's Director of Finance, stated that AFS's "revenue comes from leasing dark fiber-optic strands." In another letter, Constable stated that when the network was built in Ohio, AFS was "expecting to acquire many new customers and achieve a certain sales volume." In addition, AFS's counsel sent a letter to the tax department referring to the "36 strands that [AFS has] leased to others," stating, "[O]nce we lease the fiber strands to a company we do not monitor the use that they make of the fiber strands that they lease."

{¶ 34} The commissioner's final determination that the unlit fiber was "used in business" as that term is defined in R.C. 5701.08 is consistent with our case law and is supported by the record. We conclude that AFS has not met its burden of showing that the Tax Commissioner's final determination was clearly unreasonable or unlawful.

*Is AFS's other equipment "used in business"?*

{¶ 35} AFS raises several evidentiary challenges to the commissioner's determination that AFS's other equipment was used in business pursuant to R.C. 5701.08(A). Having waived the evidentiary hearing before the BTA in this case, AFS relies on the testimony of Azzolina, its project-management director, which was submitted at the BTA hearing in the 2003 tax-year case.

{¶ 36} *Shaker Heights conduit pipes*. AFS argues that it should not have to pay tax on the two empty conduit pipes running through the municipality of Shaker Heights, Ohio, because the evidence supports a deduction for them. According to AFS, it does not own these conduits, did not want or need to install them, and cannot use them.

{¶ 37} AFS's claims are not supported by the record. AFS reported the Shaker Heights conduit pipes on its 2004 annual report. If AFS does not own

these sections of conduit pipe, then it should not have reported them as personal property subject to taxation. Moreover, Azzolina testified that AFS owns and controls the two empty Shaker Heights conduit pipes. Azzolina stated that AFS installed the two additional Shaker Heights conduits at its own cost to obtain a permit to install the loop through Shaker Heights. Azzolina additionally stated that AFS – not Shaker Heights – had the authority to sell the vacant conduit pipe running through Shaker Heights.

{¶ 38} Although AFS owns these conduits, two of the three conduit pipes that run through Shaker Heights are empty and have never held fiber. Thus, it does not appear that these two conduits are currently being used in AFS's fiber-leasing business, i.e., held out for lease to others. Nevertheless, we have held that when an assessment is contested, the burden is on the taxpayer to show in what manner and to what extent the commissioner's findings and assessments were faulty and incorrect. *Federated Dept. Stores,* 5 Ohio St.3d at 215, 5 OBR 455, 450 N.E.2d 687, citing *Midwest Transfer Co. v. Porterfield* (1968), 13 Ohio St.2d 138, 141, 42 O.O.2d 365, 235 N.E.2d 511. Here, AFS has offered no probative evidence of the actual costs incurred to construct the two additional conduits in Shaker Heights. Instead, AFS offered only general estimates of its additional construction costs. We conclude that AFS has failed to show that the Tax Commissioner's assessment regarding the Shaker Heights conduits is unsupported by the record or contrary to law.

{¶ 39} *Make-ready costs.* AFS argues that the evidence supports a deduction for make-ready costs. Make-ready costs are the costs incurred to move other lines and equipment on above-ground poles that are not owned by AFS so that AFS can attach fiber-optic cable or other equipment to the pole. Make-ready costs would also include the costs to install a new pole if an existing pole could not accommodate additional connections. AFS argues that make-ready costs are

not costs to build the fiber loop, but instead constitute improvements to the property of others.

{¶ 40} The Tax Commissioner rejected AFS's request to deduct make-ready costs from the assessment for two reasons. First, citing *Gruen Watch Co. v. Evatt* (1944), 143 Ohio St. 461, 28 O.O. 393, 55 N.E.2d 794, the commissioner determined that the make-ready costs at issue here are "installation and relocation costs," which are part of the cost of the equipment for valuation purposes. The commissioner noted that under fundamental and generally accepted accounting principles, all normal and reasonable costs that are incurred to get a fixed asset in place and ready for use are part of the cost of the asset for valuation purposes. Thus, the commissioner found that AFS's make-ready costs are properly included costs of the fiber-loop network and, as such, are taxable.

{¶ 41} Second, the commissioner concluded that AFS had failed to present sufficient probative evidence to establish the actual value of the make-ready costs. AFS requested a deduction of $406,000 in make-ready costs but, according to the commissioner, offered only a "crude approximation" of these costs.

{¶ 42} In its appeal to this court, AFS has offered no evidence or legal authority establishing that these make-ready costs constitute improvements to the property of others. Nor has AFS pointed to any specific legal or factual error in the commissioner's determination that make-ready costs were taxable as "installation and relocation" costs. AFS refers only to the testimony of Azzolina, who estimated that make-ready costs incurred during the construction of the fiber loop amounted to $25,000 per mile, or $4.78 per foot. These bare estimates are not probative evidence of actual value. Absent a demonstration that the Tax Commissioner's findings are clearly unreasonable and unlawful, those findings are presumptively valid. *Hatchadorian v. Lindley* (1986), 21 Ohio St.3d 66, 21 OBR 365, 488 N.E.2d 145, paragraph one of the syllabus.

**{¶ 43}** *AFS's alternative argument.* AFS contends alternatively that the conduit pipes, above-ground poles, computer-monitoring equipment, and make-ready costs are entitled to the same 87.5 percent reduction that the Tax Commissioner granted to AFS's unlit fiber in his final determination for the 2003 tax year.

**{¶ 44}** For both the 2003 and 2004 tax years, the Tax Commissioner rejected the argument that this other network equipment should receive the same reduction that the unlit fiber received for tax year 2003. The commissioner found that the use of the conduit, poles, and monitoring equipment with those fibers that were lit made these items used in business under R.C. 5701.08.

**{¶ 45}** AFS offers two arguments in support of this claim. First, AFS argues that the Tax Commissioner did not submit any testimony in the appeal to the BTA and offered only the Guidelines for Filing Ohio Public Utility Tax Reports as an exhibit. Yet when cases are appealed to the BTA, the burden of proof is on the appellant. That burden requires the appellant to present competent and probative evidence to make its case. And the appellant is not entitled to a reduction in valuation merely because no contrary evidence is presented. See *Alcan Aluminum Corp. v. Limbach* (1989), 42 Ohio St.3d 121, 123-124, 537 N.E.2d 1302.

**{¶ 46}** Second, AFS argues that because there was no change in the law between tax years 2003 and 2004, it is entitled to the same reduction of value for the conduit pipes, above-ground poles and support equipment, and computer-monitoring system that the Tax Commissioner allowed for the unlit fiber for the 2003 tax year. AFS also notes that the Tax Commissioner found in this case that AFS's "assets and business have not materially changed" since the 2003 tax year.

**{¶ 47}** AFS apparently believes that the Tax Commissioner's decision to reduce the taxable value of the unlit fiber for the 2003 tax year requires him to render the same determination for all of AFS's personal property for the following

tax year. The Tax Commissioner, however, is not bound by the value assessed to property in a prior tax year. *Freshwater v. Belmont Cty. Bd. of Revision* (1997), 80 Ohio St.3d 26, 28-29, 684 N.E.2d 304. AFS cannot satisfy its burden of proving its proposed value simply by relying on evidence that the state of the property has not changed since the earlier tax year. See *Fogg-Akron Assoc., L.P., v. Summit Cty. Bd. of Revision,* 124 Ohio St.3d 112, 2009-Ohio-6412, 919 N.E.2d 730, at ¶ 15-16.

### Conclusion

{¶ 48} Based on the foregoing, AFS has not met its burden of showing in what manner and to what extent the commissioner's findings and assessments were faulty and incorrect. *Federated Dept. Stores, Inc.*, 5 Ohio St.3d at 215, 5 OBR 455, 450 N.E.2d 687. We affirm the BTA's decision.

Decision affirmed.

MOYER, C.J.,[1] and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

––––––––––––––––––––

Sleggs, Danzinger & Gill Co., L.P.A., and Todd W. Sleggs, for appellant.

Richard Cordray, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellee.

––––––––––––––––––––

1. The late Chief Justice Thomas J. Moyer participated in the deliberations in, and the final resolution of, this case prior to his death.