[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Singer v. Fairland Local School Dist. Bd. of Edn.,* Slip Opinion No. 2017-Ohio-8368.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8368

THE STATE EX REL. SINGER *v.* FAIRLAND LOCAL SCHOOL DISTRICT BOARD OF EDUCATION.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Singer v. Fairland Local School Dist. Bd. of Edn.,* Slip Opinion No. 2017-Ohio-8368.]

*Mandamus—Public employment—R.C. 3319.081—Writ sought to compel school district to recognize custodian as "regular nonteaching school employee" with continuing-contract status—Writ denied.*

(No. 2015-1517—Submitted May 17, 2017—Decided November 1, 2017.)

IN MANDAMUS.

_____

FRENCH, J.

{¶ 1} In this original action, relator, Kurt Singer, seeks a writ of mandamus to compel respondent, Fairland Local School District Board of Education ("Fairland"), to recognize him as a "regular nonteaching school employee" under R.C. 3319.081 with continuing-contract status.  He also asks this court to order

Fairland to make him whole by awarding him back wages and benefits and crediting him with paid leave and other accrued rights. We deny the writ.

**Background**

{¶ 2} Fairland hired Singer as a substitute custodian on September 11, 2006. Singer's employment as a substitute custodian has continued to the present. All the paystubs that Singer received from Fairland identify him as a "SUB CUST" (capitalization sic), and Fairland's staff-attendance reports detail that Singer was "substituting" every date he worked for Fairland between September 2006 and June 30, 2016. Singer has never signed a written employment contract with Fairland. Singer nevertheless contends that he is a "regular nonteaching school employee" under R.C. 3319.081 and that he is entitled to the statutory rights set out in R.C. Chapter 3319.

{¶ 3} R.C. 3319.081 governs employment contracts for certain nonteaching school-district employees. "Newly hired regular nonteaching school employees, including regular hourly rate and per diem employees, shall enter into written contracts for their employment which shall be for a period of not more than one year." R.C. 3319.081(A). If the school district rehires such an employee, the second contract shall be for a period of two years. *Id.* And if the school district renews the employee's contract after the second contract expires, then "the employee shall be continued in employment." R.C. 3319.081(B). In other words, a qualifying employee who is employed more than three years achieves continuing status.

{¶ 4} "Continuing" status under R.C. 3319.081 carries benefits. The person's employment is generally subject to termination only for cause. R.C. 3319.081(C). And the school district may not reduce a continuing employee's salary, except as part of a uniform plan affecting all nonteaching employees. R.C. 3319.081(B).

2

**{¶ 5}** In addition to the contract rights afforded by R.C. 3319.081, regular nonteaching employees are statutorily entitled to a host of benefits, including vacation leave (R.C. 3319.084), paid holidays (R.C. 3319.087), sick leave (R.C. 3319.141), and personal leave (R.C. 3319.142).

**{¶ 6}** Singer alleges that Fairland wrongly designated him as a "substitute" and that as a result, he has been paid less than a full-time custodian, lost health benefits and some pension benefits, and been deprived of sick leave, personal days, vacation days, and holiday pay. Singer requests a writ of mandamus directing Fairland to recognize him as a regular nonteaching employee with a continuing contract pursuant to R.C. 3319.081(B) since the beginning of the 2009-2010 school year and ordering Fairland to make him whole for the back wages and benefits he would have received had he been timely recognized as a regular nonteaching employee.

### Analysis

**{¶ 7}** Mandamus is the appropriate vehicle for vindicating rights under R.C. 3319.081. *See State ex rel. Couch v. Trimble Local School Dist. Bd. of Edn.*, 120 Ohio St.3d 75, 2008-Ohio-4910, 896 N.E.2d 690, ¶ 14, 34. To be entitled to a writ of mandamus, Singer must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Cleveland Right to Life v. State Controlling Bd.*, 138 Ohio St.3d 57, 2013-Ohio-5632, 3 N.E.3d 185, ¶ 2.

**{¶ 8}** At the outset, we reject two theories that Fairland puts forward as grounds for denying Singer's petition. First, Fairland contends that Singer was not a regular nonteaching employee because he did not have a written employment contract. According to Fairland, R.C. 3319.081(A) imposes a mandatory condition by stating that regular nonteaching employees "*shall* enter into written contracts." (Emphasis added.) And R.C. 3319.081(B) makes those employees eligible for

continuing employment only upon expiration of a second written contract. Because Singer has never had a written contract, Fairland argues that he cannot qualify as an employee "continued in employment" under R.C. 3319.081(B).

{¶ 9} But R.C. 3319.081(A) imposes a duty upon the *employer* to extend a written contract to all regular nonteaching school employees. The employee cannot control whether he receives a written contract. To adopt Fairland's position would be to declare that R.C. 3319.081 imposes a duty on a school board to offer a contract only if the *school board* determines that an employee qualifies for a contract; in other words, it would defeat the statute's purpose, which is to protect the rights of qualifying nonteaching employees. *See State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.*, 82 Ohio St.3d 222, 226, 694 N.E.2d 1346 (1998).

{¶ 10} In support of its argument on this point, Fairland cites *Gates v. River Local School Dist. Bd. of Edn.*, 11 Ohio St.2d 83, 228 N.E.2d 298 (1967), which held that in the absence of an express employment contract, a school board could hire a nonteaching employee for an indeterminate period of time, to be measured by the work to be accomplished, without incurring an obligation to offer continuing employment. *Id.* at 90-91. But *Gates* involved a prior version of R.C. 3319.081 that neither contained the phrase "regular nonteaching school employees" nor stated that it applied to regular hourly and per diem employees. *See* Am.S.B. No. 200, 126 Ohio Laws 162, effective Sept. 1, 1955. *Gates* offers no guidance regarding compliance with the current version of R.C. 3319.081.

{¶ 11} Second, Fairland suggests that Singer does not qualify as a regular nonteaching employee because he does not qualify as a "full-time" employee, as that term is purportedly defined in the collective-bargaining agreements that have been in place since the date of Singer's hiring in 2006 between Fairland and the union that represents its nonteaching employees. Fairland has submitted an affidavit asserting that pursuant to those agreements, "full-time regular custodians, custodial maintenance, and maintenance employees at Fairland are contracted to

work eight (8) hours a day for two hundred and sixty (260) days a year over the course of twelve (12) months" and has submitted several other affidavits making essentially the same assertion. No affidavit cites a specific section of the collective-bargaining agreements where this provision may be found, and our review of the four collective-bargaining agreements filed as evidence shows that they contain no such term and do not purport to define "full-time" employment. Two of the collective-bargaining agreements—those in effect from September 30, 2005, through September 29, 2008, and from October 1, 2014, through September 30, 2017—do, however, include appendices that chart contract amounts, i.e., annual-salary schedules, for various positions, including custodians, and the hourly rates upon which those annual contract amounts are based. The hourly rates and annual salaries increase depending on an employee's years of service. At the bottom of the columns that detail the hourly rates that apply to custodians, the charts identify the months worked as 12, the hours per day as 8, and the contract days as 260.

{¶ 12} R.C. 3319.09(B) defines "year," as applied to an employee's term of service, to mean at least 120 days of actual service within a school year. Singer exceeded that mark during the first seven of his years of service. The statutory definition is controlling unless there is a collective-bargaining agreement in force that specifically covers the matter at issue. *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 28-29, 641 N.E.2d 188 (1994).

{¶ 13} Fairland argues that the collective-bargaining agreements conflict with the definition of "year" in R.C. 3319.09(B) and thus supersede the statutory definition. But "to negate statutory rights of public employees, a collective bargaining agreement must use language with such specificity as to explicitly demonstrate that the intent of the parties was to preempt statutory rights." *State ex rel. Ohio Assn. of Pub. School Emps./AFSCME, Local 4, AFL-CIO v. Batavia Local School Dist. Bd. of Edn.*, 89 Ohio St.3d 191, 729 N.E.2d 743 (2000), syllabus. We conclude that the calculation of a full-time regular custodian's salary based on a

greater number of hours than that which statutorily defines a year for purposes of an employee's "term of service" does not explicitly demonstrate an intent to preempt statutory rights, especially when, as here, all four collective-bargaining agreements recognize that the term "regular non-teaching employees" includes not only full-time employees but also "regular short-hour employees."

{¶ 14} Whether or not Singer is a full-time employee, he is not entitled to continuing status unless he is also a *regular* nonteaching employee. *State ex rel. Borders v. Jefferson Local School Dist.*, 59 Ohio St.2d 109, 110, 391 N.E.2d 1040 (1979); *see also Blair v. Milford Exempted Village School Dist. Bd. of Edn.*, 62 Ohio App.3d 424, 429-430, 575 N.E.2d 1190 (12th Dist.1989) (suggesting in dicta that an employee hired to serve as a substitute on an as-needed basis was not a "regular" nonteaching employee), *abrogated in part on other grounds*, *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61; *Wilson v. Hubbard Exempted Village School Dist. Bd. of Edn.*, 11th Dist. Trumbull No. 3129, 1983 WL 6168 (June 24, 1983) (holding that a substitute bus driver, who was hired without a contract, was assigned daily to a single route for the entire school year, and worked 35 hours a week, was not a regular nonteaching school employee). Having reviewed the evidence, we conclude that Singer has not demonstrated by clear and convincing evidence that he was a "regular nonteaching school employee" under R.C. 3319.081.

{¶ 15} R.C. Chapter 3319 does not define "regular nonteaching school employee." We afford undefined statutory terms their plain and ordinary meaning. *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 2014-Ohio-452, 6 N.E.3d 9, ¶ 22, citing *Am. Fiber Sys., Inc. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468, 928 N.E.2d 695, ¶ 24. Because the parties do not dispute that Singer is a nonteaching school employee, we focus on the term "regular." "Regular" means "[s]teady or uniform in course, practice, or occurrence; not subject to unexplained or irrational variation. Usual, customary, normal or general." *Black's Law Dictionary* 1285

(6th Ed.1990); *accord Webster's Third New International Dictionary* 1913 (1986). These definitions do not describe Singer's employment, which has been irregular with respect to days of service, hours, and school-building assignments.

**{¶ 16}** Throughout his employment, Singer's days of service have varied widely. For example, during the 2006-2007 school year, Singer worked as many as ten days during some pay periods but worked eight days or fewer in a majority of the pay periods, including several in which he worked four days or fewer. During the 2007-2008 school year, Singer's workdays per pay period ranged from four to ten days. And in summer 2008, Singer did not work at all during three consecutive pay periods.

**{¶ 17}** Just as he had no regular schedule, Singer had no regular location to which he was assigned. Fairland has four school buildings—two elementary schools, a middle school, and a high school. Fairland assigns its full-time regular custodians to work at a single building, and the school board must approve the transfer of a full-time regular custodian from one building to another. But Fairland routinely assigned Singer to multiple schools during a single pay period. During the two-week pay period for September 28 through October 11, 2006, for example, Singer worked at three separate locations. In his first nine months of employment as a substitute custodian, there was only one pay period (out of 19) in which Singer was assigned to a single location, and that was a pay period in which he worked only one day. In fact, Singer often worked at more than one location *on the same day*. For example, during one period of time in May 2007 when Singer worked 17 days, he split his time on 12 of the days between one of the elementary schools and either the middle school or the high school.

**{¶ 18}** Fairland's records indicate that Singer was called to these multiple locations for irregular intervals and to substitute for many different employees. In the pay period for October 1 to 14, 2009, for example, Singer worked on eight different days, at two different locations, for intervals as brief as two hours and as

long as eight hours, in substitution for four different full-time regular custodians. More recently, during the pay period for May 14 to 27, 2015, he worked a total of four days, substituting for three different full-time regular custodians.

{¶ 19} Finally, the manner in which Fairland requested Singer to work varied. Roni Hayes, the former principal of Fairland High School and current district superintendent, stated in her affidavit that when she served as the high-school principal, either she or her secretaries would contact substitutes, including Singer, from the district's approved substitute list to fill in for full-time regular custodians at the high school. Singer identified individuals at each of the Fairland school buildings who had contacted him to perform custodial work. At other times, however, Singer was not called in on a daily basis but was instead instructed to report to a particular work location daily until further notice. Singer was able to, and at times did, turn down opportunities to work as a substitute custodian at Fairland.

{¶ 20} Considering the entire arc of his employment, we cannot conclude that Singer's employment was in any meaningful way "regular." Accordingly, Singer has not established by clear and convincing evidence that he has a clear legal right to his requested relief or that Fairland had a clear legal duty to provide it. Singer therefore is not entitled to a writ of mandamus.

Writ denied.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FISCHER, and DEWINE, JJ., concur.

O'NEILL, J., dissents, with an opinion.

_____

**O'NEILL, J., dissenting.**

{¶ 21} I must respectfully dissent. Specifically, I disagree with the majority's conclusion that relator, Kurt Singer, was not a "regular" employee as that term is used in R.C. 3319.081. The facts in this case are not in dispute, and

based upon those facts, Singer should have been offered a continuing contract after his third year of employment with respondent, Fairland Local School District Board of Education. Hence, I would grant the writ of mandamus and order that Singer be awarded back pay, benefits, and leave time to compensate him for what he has rightfully earned.

{¶ 22} Singer worked for ten school years for respondent performing the same tasks and working similar hours as "regular" custodians. The only differences between Singer and the "regular" custodians were that the school board never offered him a contract and referred to him as a "substitute" custodian. "Regular" and "substitute" are nothing more than labels that were used to shortchange Singer from receiving what he had earned. The substance of his work was as a "regular" custodian.

{¶ 23} To prevail in this mandamus case, Singer must demonstrate that the school board deprived him of something that he was entitled to receive. *See State ex rel. Couch v. Trimble Local School Dist. Bd. of Edn.*, 120 Ohio St.3d 75, 2008-Ohio-4910, 896 N.E.2d 690, ¶ 12. From the facts presented, it is clear that Singer worked 120 days or more per year for the first seven years that he was employed by respondent. This was more days per year than many full-time custodians employed by respondent. There is no requirement that the hours he worked must be spread out evenly throughout the days he worked. Additionally, there were long stretches in which it was understood that Singer would simply show up for work each day without having to receive a call to report to work. While respondent asserts that Singer worked fluctuating hours at various schools within the district, there is no requirement that all of the work be performed at the same facility. The fact is that all of the work was performed for the same employer.

{¶ 24} Moreover, the purpose of the legislation at issue is to ensure that nonteaching workers employed by a school district are treated fairly and have some degree of job security. *See Ohio Assn. of Pub. School Emps., Chapter No. 672 v.*

*Twin Valley Local School Dist. Bd. of Edn.*, 6 Ohio St.3d 178, 182, 451 N.E.2d 1211 (1983). Based upon the precedent set by the majority's opinion, school districts could save money by refusing to offer contracts to employees and then changing the employees' work sites from facility to facility on a daily or weekly basis and changing their hours periodically. If that were done, the employees could be denied "regular" status, with the result that the school districts could pay lower wages and avoid having to provide benefits or leave time. Surely that was not the intention of the state legislature.

**{¶ 25}** Therefore, I must dissent. I would grant the writ of mandamus to ensure that Singer is provided the full compensation and benefits that he deserves.

_____

The Law Firm of Richard M. Lewis, L.L.C., Richard M. Lewis, Christen N. Finley, and Suzanna T. King; and the Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro, for relator.

Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere, and Scott A. Sollmann, for respondent.

_____