[Cite as *State v. Drawl*, 2018-Ohio-4084.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| (MECCA TOWNSHIP BOARD OF TRUSTEES, | : | **CASE NO. 2018-T-0011** |
| | : | |
| Intervenor-Appellee), | : | |
| - vs - | : | |
| DEBORAH DRAWL, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas.
Case No. 2017 CV 02055.

Judgment: Affirmed.


*Mike DeWine*, Ohio Attorney General; *Heather L. Buchanan* and *Steven T. Voigt*, Assistant Attorneys General, 30 East Broad Street, 17th Floor, Columbus, OH 43215 (For Plaintiff-Appellee State of Ohio).

*James F. Mathews*, Baker, Dublikar, Beck, Wiley & Mathews, 400 South Main Street, North Canton, OH 44720 (For Appellee Mecca Township Board of Trustees).

*Michael D. Rossi*, Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Defendant-Appellant).


TIMOTHY P. CANNON, J.

{¶1} Appellant, Deborah Drawl, appeals from the February 1, 2018 judgment entry of the Trumbull County Court of Common Pleas. The trial court removed appellant

as Fiscal Officer of Mecca Township after finding she had knowingly refused to keep the accounts of her office. For the following reasons, the trial court's judgment is affirmed.

{¶2} Appellant was elected the Fiscal Officer of Mecca Township in November 2015. Her term of office began on April 1, 2016.

{¶3} In January 2017, the Office of the Auditor of State hired Perry & Associates, CPAs, to audit Mecca Township for the 2016 fiscal year. During the attempted audit, Perry & Associates discovered significant deficiencies in Mecca Township's 2016 financial records.

{¶4} Appellant was notified by the Auditor of State that Mecca Township was "unauditable" pursuant to R.C. 117.41. In a letter dated May 25, 2017, the Auditor of State outlined the specific problems with and discrepancies in the records that rendered the Township unauditable. The letter stated:

> As part of the regular audit of Mecca Township for the period January 1, 2016 through December 31, 2016, we determined the condition of your financial records is not adequate for the Independent Public Accounting firm of Perry & Associates to finish the audit due to the following:
>
> Reconciliations were not prepared from April 30 through September 1, 2016. The reconciliations that were prepared had numerous unexplained other adjusting factors in order to make it appear the book balance agreed to the bank balance. The following differences were noted:

| Reconciliation Date | Unexplained Other Adjusting Factors |
|---|---|
| April 30 | ($132,491.80) |
| September 1 | ($102,686.26) |
| September 30 | $21,760.20 |
| October 31 | $26,988.49 |
| November 30 | $2,303,491.87 |
| December 31 | $7,319.08 |

> • Fund balance adjustments totaling ($43,658.47) were made during the year that are unsupported.

2

- A manual check was written for $12,727 to OTARMA in November; however, this debit from the checking account was never recorded in UAN.
- There is a large time lapse in recording of revenues (transaction dates and post-dates are months apart from each other).
- There is a large difference in the Township's UAN ledger for EMS billing receipts compared to the billing company's confirmation (there is minimal receipt support in the township records).
- The Township has not filed a complete annual financial report for 2016 (the township did not prepare and file footnotes.)

In addition, the Board minutes are vague and none were approved by the Trustees.

{¶5} Appellant was notified that she had ninety days from the date of the letter to revise the records and provide the data necessary to complete the audit and that failure to do so could result in legal action pursuant to R.C. 117.42. The letter further indicated that if she needed assistance in correcting the deficiencies, appellant could contact the Auditor of State's Local Government Services ("LGS") division or an independent accounting firm.

{¶6} After completion of the ninety-day period, appellant met with representatives of the Auditor of State's office who determined the Township failed to make reasonable efforts to bring its accounts, records, files, and reports into auditable condition. Consequently, in a letter dated October 25, 2017, the Auditor of State requested the Ohio Attorney General commence legal action pursuant to R.C. 117.40. In a letter dated October 30, 2017, the Attorney General's office notified appellant of its intention to seek her removal if she did not voluntarily resign.

{¶7} On November 16, 2017, the state of Ohio, through the Attorney General, filed a complaint in the Trumbull County Court of Common Pleas seeking removal of the Fiscal Officer of Mecca Township pursuant to R.C. 117.40. The state also requested an

3

expedited hearing pursuant to R.C. 117.37. The complaint alleged appellant had knowingly refused to keep the accounts of her office.

{¶8} The expedited hearing was held on November 30, 2017. On the date of the hearing, for the first time, appellant's counsel raised the issue of whether appellant had been given appropriate notice of the hearing pursuant to the Rules of Civil Procedure. The state argued the Civil Rules were inapplicable because the hearing was ordered pursuant to statute. The trial court ordered the parties to brief the notice issue but proceeded with the hearing because all witnesses were present. The Mecca Township Board of Trustees was permitted to intervene for the purpose of questioning a witness.

{¶9} Bethany Nelson testified she was the lead auditor in the Mecca Township audit for the 2016 fiscal year. When Nelson attempted to begin the audit in February 2017, appellant was "somewhat confrontational" and "not very receptive to speaking with me regarding the audit." Appellant provided disorganized and incomplete records and failed to provide all the requested information.

{¶10} Nelson encountered multiple accounting problems when she attempted the audit. One problem was that appellant had not properly completed the bank reconciliations. For example, the reconciliation for April 30, 2016, was not prepared and posted until July 2016. Nelson explained it is not proper accounting practice for a gap of several months to exist between the reconciliation date and the posting date. Additionally, after the April 2016 reconciliation, the next reconciliation was not performed until September 1, 2016. Nelson explained that such a gap between reconciliations indicates a monthly review of the financial records is not being performed.

{¶11} Appellant also used large, unexplained "plug numbers" in the reconciliations "to force" the Township's books to balance with its bank statements. One plug number,

4

used in the November 30, 2016 reconciliation was $2,303,491.87. Nelson testified that unexplained plug numbers could indicate theft of funds or improperly kept accounting records.

{¶12} Not one single reconciliation was properly completed from May through December 2016. When appellant was notified of the problems, she responded that she did not know how to correct them. Although appellant indicated on "a couple of occasions" that she would attempt to correct the issues with the reconciliations, Nelson testified she did not receive any documents correcting the errors.

{¶13} In addition, appellant made multiple unsupported fund balance adjustments. Nelson testified she questioned appellant about two particularly large unsupported adjustments. Appellant provided Nelson with a packet to support one of those adjustments, but Nelson was unable to determine whether it was accurate. Nelson testified the fund balance adjustments remained unsupported at the time of the hearing.

{¶14} Mecca Township's financial statement for the fiscal year ending December 31, 2016 was improperly completed because it was missing the required footnotes. Appellant indicated she would prepare the footnotes and refile the financial statement; at the time of the hearing, however, the financial statement remained improperly prepared and without footnotes.

{¶15} Nelson explained it would not be possible for any reasonable person to make informed financial decisions based on Mecca Township's financial records. She determined she could not complete the audit.

{¶16} Nelson met with appellant in September 2017 to determine whether any of the issues rendering the Township unauditable had been addressed. Appellant had not

resolved any of the problems and expressed she did not have the expertise to fix the problems.

{¶17} Eric Holesko, a senior audit manager with the Auditor of State's office, testified he called appellant on September 12, 2017, regarding the status of the May 25, 2017 unauditable letter. Appellant indicated none of the issues had been corrected.

{¶18} Holesko met with appellant on September 18, 2017. They reviewed each point of the unauditable letter, and appellant gave verbal responses to address each point. Appellant also provided Holesko with a letter that purported to explain the issues, but it only addressed three of the outstanding issues, and it did not contain any documentation that supported or corrected any of those issues. Holesko testified that as of that meeting, the books were still in unauditable condition.

{¶19} Joey Jones testified that he is the chief auditor for the east region with the Auditor of State's office. He explained that he became involved in the audit of Mecca Township after Perry & Associates contacted him and indicated they were having trouble getting reconciled books and financial statements. Jones testified that the decision to declare Mecca Township unauditable was based on the improperly filed financial statement and the Township's lack of cooperation. The decision to issue the unauditable letter was made after "exhaustive measures" were taken. Further, "there was no activity taken to cure the unauditable situation."

{¶20} Jones testified that improper financial records could have serious consequences. He explained that, "[n]ot only do the officials not know how much money is available to spend to run the day-to-day operations, it also raises what we call fraud risk factors * * * to where possibly money has been misappropriated, misspent, stolen[.]"

**{¶21}** Jones explained that the Township Fiscal Officer "is responsible for keeping the records, accounts, books, for the Township to report financial transactions to the trustees, to provide them with budgetary information so they can make informed decisions as far as purchasing, etcetera." The Fiscal Officer is also responsible for maintaining the minutes of the Township and for completing the financial reports and notes of the financial statements.

**{¶22}** Jones affirmed that the Auditor of State's website reflected appellant had met her initial education requirement for her term, meaning that "since she was newly elected she had at least the six hours of continuing ed within that first year after being appointed - - or elected."

**{¶23}** Jones testified there are several resources available to Fiscal Officers, including free webinars through the Auditor of State's website and assistance from Fiscal Officers from neighboring Townships. The Uniform Accounting System ("UAN"), the accounting system utilized by Mecca Township, offered 39 hours of continuing education at no additional charge to the Township. Many of those hours could be completed through webinars. Associations throughout Ohio also offer continuing education. Jones testified that in September 2017, there was a conference in Cleveland that charged a registration fee of $300 for 19 hours of continuing education. The Auditor of State had a local government officials conference in Columbus that cost $200 for 11 hours. Jones further explained the UAN provides other resources, including "support staff, help desk, etcetera, to help Fiscal Officers with questions, comments, concerns to walk them through how to post entries and do that kind of thing."

**{¶24}** Jones testified that Local Government Services ("LGS") is a division of the Auditor of State that can help entities with fiscal emergencies. They can also assist with

7

compiling financial statements and restructuring accounting records. Jones explained

LGS sent appellant a letter offering its services. The letter states, in part:

> The services requested are as follows:
>
> 1. Reconcile the Township's cash journal with the bank for the period March 1, 2016, through December 1, 2016.
>
> The Township will be responsible for identifying the appropriate account codes for all source documents, such as receipts and purchase orders.
>
> The Township remains responsible for the reconciliation. It is also the Township's responsibility to design, implement, and maintain internal codes, including monitoring ongoing activities.
>
> Management is responsible for making all financial records and related information available to LGS.
>
> * * *
>
> Mecca Township remains responsible for the reconciliations.
>
> * * *

The letter further stated: "It is estimated that 168 hours will be needed to complete this project. Our fees for these services will be billed monthly to the Township at a rate of $50 per hour, and the total cost is not anticipated to exceed $8,400."

{¶25} Jones testified the LGS services were a "temporary fix" that would not "address the root of the problem, which is the financial statements and the books are still a mess even when LGS * * * is done with their services." Jones further explained the price of $8,400 for LGS's services would cost more than double the price of the audit itself. Jones testified that, "to me, seems kind of not right that it would take that much more time and money to fix books for a small entity than to do the complete audit." Jones explained that when LGS offers their services, "[t]he fiscal officer still has to take

8

responsibility, has to have the knowledge and ability to understand what they've done in order to fix the records." Jones explained that even if LGS performed the services stated in its letter, the Township had other accounting problems that would not be resolved by LGS.

{¶26} Fritz Birkhimer, a trustee for Mecca Township, testified that the unauditable status of the Township affects its management operations. Because the Board does not know how much money is in the bank accounts, the Township is unable to make timely payments to its vendors. Consequently, the Township has received past due bills and shut-off notices from vendors, including from the vendor that facilitates communication between the Township's ambulances and the hospitals.

{¶27} Birkhimer further testified that appellant had several training opportunities when she took office. Appellant had an opportunity to work with her predecessor but chose not to do that. Birkhimer explained that he personally requested from the county auditor's office a recommendation for someone who could train appellant. Vivian McDowell, the Fiscal Officer from Howland Township was recommended. Vivian sent the Mecca Township Board of Trustees a contract offering to work with appellant on an "as-needed basis" for $35 per hour. The Board agreed to incur the expenditure. Birkhimer testified that appellant cancelled her meetings with Vivian and refused to participate in any training sessions. Appellant's last contact with Vivian was in November 2016. The Township also contacted the Fiscal Officer from Canfield Township to work with appellant, but "that was never done either."

{¶28} Appellant requested the Board sign a check for $500 to pay for training with John Moran, the Johnson Township Fiscal Officer. The Board asked appellant to provide a bill from Moran, specifying how much per hour and how many hours the $500 would

9

cover. Birkhimer testified the bill was never provided to the Township, and appellant voided the check.

{¶29} Birkhimer indicated he was unaware of any training that appellant completed in 2016. Appellant went to Columbus to complete training in "January, February of '17." Birkhimer testified the Township paid for the training, and appellant used the "company credit card."

{¶30} On cross-examination, Birkhimer testified that in April 2016, appellant requested $2,500 for UAN system training. In response, the Board approved $500 for training. Birkhimer further testified that in a meeting of the Board of Trustees in July 2017, the Board voted not to have LGS come in and "correct the bank statements with the cash journal." Birkhimer affirmed he remembered the "Trustee Governor saying that he would pay the 8,500 for [LGS] after [appellant] was removed from office."

{¶31} Appellant testified that she is the Mecca Township Fiscal Officer. Appellant explained that in Spring of 2017, she was asked by Perry & Associates to produce the Township's records. She "told them that the records were a complete mess because I did not * * * understand how to file the records for them to be able to understand." Appellant asked for time to get the records in order but was ultimately unable to do so. When she produced the records, they were in "disarray."

{¶32} Appellant explained that when she got the May 25, 2017 letter from the Auditor of State, appellant recognized that she needed to correct the records, but she did not have the training to fix the problems. Appellant testified she sought assistance from LGS to fix the issues. In July 2017, appellant presented the Board with a proposed contract with LGS. The Board did not approve the contract.

**{¶33}** After the Board did not approve the contract, appellant tried to reconcile the bank statements. She identified "some of the errors" in the reconciliations up to August 2016. She explained, however, that she "was not sure" how to make the corrections in UAN.

**{¶34}** On cross-examination, appellant testified she did not attend any in-person UAN training courses in 2016. Appellant explained she received e-mails from the Auditor of State that alerted her of training opportunities, and she affirmed that most of the training classes are free.

**{¶35}** Appellant explained that she took two online training courses through YouTube in 2016 but "realized that I was not going to be able to learn by YouTube because I could not ask questions." Appellant explained she had registered for a training course in Columbus that took place in December 2016, but she was unable to attend because of a family emergency. Appellant was presented with an attendance sheet from a training course that took place in September 2016. Appellant's name was on the sheet with the words "No show" next to her name. Appellant testified she did not recall registering for that course. When questioned about another course that took place in September, appellant testified she had registered for the course but was unable to attend due to a personal emergency.

**{¶36}** Appellant testified Mecca Township's financial reports for 2016 were not prepared correctly and the bank statements were not reconciled. Appellant testified she did not disagree with Bethany Nelson's testimony.

**{¶37}** Appellant testified she took the initial training required of Fiscal Officers "at a convention in January of 2017[.]" Appellant explained she was unable to attend training courses in 2016 because the Township refused to provide her with a letter verifying she

11

was elected as Fiscal Officer. Appellant had some training with John Moran in 2016; the Township paid him $500 for 20 hours of training. Appellant testified she requested additional training with Moran, but the Board would not approve it. Appellant chose not to train with the Fiscal Officers from Howland and Canfield Townships because she had not personally selected those individuals.

{¶38} At the conclusion of the witness testimony, the trial court ordered the parties to submit proposed findings of fact and conclusions of law.

{¶39} After reviewing the briefs, proposed findings of fact and conclusions of law, and the evidence and testimony from the hearing, the trial court issued an order on January 2, 2018. Addressing the notice issue, the trial court found that although an expedited hearing was necessary pursuant to R.C. 117.37, the Civil Rules were not clearly inapplicable in this case. The court found the 14 days between the date of the filing of the complaint and the date of the hearing was not proper and "failed to comply with even the most basic tenants of due process and application of the civil rules." The court further found, however, that appellant was represented by counsel and had already participated in the hearing and that another 30 days has passed since that hearing. The court set a final hearing on the merits for January 25, 2018, and indicated the parties could submit at that time any further relevant evidentiary material. Therefore, the court found sufficient time had developed for appellant to adequately prepare and answer to the requests for her removal. The court stated it would postpone ruling on the removal petition until the conclusion of the January 25 hearing.

{¶40} At the January 25, 2018 hearing, appellant presented no additional evidence. She indicated she had filed the 2016 annual report with footnotes on the previous day. Referencing the deficiencies outlined in the Auditor of State's May 25, 2017

letter, the parties stipulated that since the date of the November 2017 hearing, appellant remedied only two of the deficiencies that rendered the records unauditable.

{¶41} The trial court entered final judgment on February 1, 2018. The trial court stated:

> [Appellant] acted "knowingly" in that she is aware that her conduct will likely cause a specific result. [Appellant] failed to avail herself of certain training opportunities; failed to utilize the training offered through Howland and Canfield Township fiscal officers; failed to file the appropriate notations in a timely manner to the 2016 financial report; failed to keep the records in an organized manner; failed to reconcile the accounting records in a timely monthly fashion; failed to properly document fund balance transfers; and ultimately even today has failed to remedy the unauditable status of the records[.]

The trial court determined, as a result of the unauditable status of the accounts and appellant's failure to correct this status by remedying the deficiencies in the accounts, she had knowingly refused to keep the accounts of her office. The court ordered appellant removed as Fiscal Officer of Mecca Township pursuant to R.C. 117.40.

{¶42} Appellant noticed a timely appeal. On appeal, she asserts a sole assignment of error, which states:

{¶43} "The trial [court] erred in entering judgment in Appellee, State of Ohio's favor; removing Appellant from her 'fiscal officer' office; and ordering that she return the implements of that office."

{¶44} Appellant first argues that because the Auditor of State's request for legal action was based on the unauditable status of the Township records pursuant to R.C. 117.41, the Auditor of State should have requested the Attorney General bring an action pursuant to R.C. 117.42 rather than 117.40.

{¶45} Chapter 117 of the Ohio Revised Code sets forth the administrative rules necessary to execute the duties of the Auditor of State. R.C. 117.41 provides that when

13

a public office that has been declared unauditable "fails to make reasonable efforts and continuing progress to bring its accounts, records, files, or reports into an auditable condition within ninety days after being declared unauditable, the Auditor of State shall request legal action pursuant to [R.C. 117.42] to compel the public office to bring its accounts, records, files, or reports into an auditable condition." R.C. 117.42 states, in pertinent part: "Upon request of the auditor of state, the attorney general may file and prosecute to judgment or decree appropriate actions to * * *secure compliance with this chapter, * * * secure compliance with the laws, ordinances, rules, and orders pertaining to any public office, and enforce generally the laws relating to the expenditure of public funds."

{¶46} R.C. 117.40 provides that at the request of the Auditor of State, the Attorney General may bring an action to remove "[a] public official of a public office * * * who knowingly refuses to keep the accounts of his office as prescribed by this chapter or rules adopted by the auditor of state pursuant thereto, or to make the reports required by the auditor of state[.]" Such official may be removed after a hearing in the court of common pleas in the county in which the office is located. *Id.*

{¶47} The Attorney General "may" bring an action under R.C. 117.42 to require a public official to comply with the law and "may" bring an action under R.C. 117.40 to seek removal of a public official who knowingly refused to keep the accounts of his or her office. The only predicate requirement for either is that the action be requested by the Auditor of State. As noted, after exhaustive efforts to get appellant to comply, the Attorney General did, in fact, receive a request from the Auditor of State to seek appellant's removal under R.C. 117.40. Even if the Auditor of State should have also requested the Attorney

14

General bring an action pursuant to R.C. 117.42, appellant has failed to demonstrate the Auditor of State was precluded from requesting an action pursuant to R.C. 117.40.

{¶48} Appellant further maintains the Auditor of State's request that an action be brought pursuant to R.C. 117.40 was made "without any finding, suggestion or hint that Fiscal Officer Drawl had 'knowingly refused' to keep her accounts or make her reports." This contention is belied by the record.

{¶49} The October 30, 2017 letter from the Attorney General to appellant states, in part:

> Since sending the [May 25, 2017] letter, the Auditor of State's office met with you on September18, 2017, and Perry & Associates met with you on September 29, 2017. In addition, throughout late September and early October 2017, auditors from Perry & Associates and the Auditor's office again reviewed the Township's financial records and had discussions with you about the records. During that review, the auditors determined that the records are still unauditable. In addition, Mecca Township has yet to file with the Auditor of State its complete and annual financial report for 2016 as required under Ohio Rev. Code Section 117.38. Thus, it is our conclusion that you have failed to bring into compliance the records you are statutorily required to keep.
>
> Please be advised that, based on these failures, the Auditor's Office has requested that the Ohio Attorney General's Office bring an action to remove you as the Mecca Township Fiscal Officer.

{¶50} This letter, in addition to the testimony provided at the hearing, reflects that the Auditor of State provided the Attorney General with evidence to support filing an action for removal under R.C. 117.40. Appellant's arguments in this regard are not well taken.

{¶51} Appellant next argues the evidence presented at the removal hearing does not clearly and convincingly support the trial court's decision to remove her as Fiscal Officer of Mecca Township.

15

**{¶52}** Article II, Section 38, of the Ohio Constitution provides that, "[l]aws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers * * * for any misconduct involving moral turpitude or for other cause provided by law[.]" As stated above, under R.C. 117.40, a public official who "knowingly refuses to keep the accounts of his office" as prescribed by Chapter 117 may be removed from office.

**{¶53}** "Proceedings to remove a public officer are quasi-penal in nature and should be strictly construed." *Adamson v. Varnau*, 12th Dist. Brown No. CA2014-07-016, 2014-Ohio-5739, ¶10, citing *Petitioners for the Removal of Stringer v. Stringer*, 11th Dist. Trumbull No. 3664, 1986 WL 3532, *2 (Mar. 21, 1986), citing *McMillen v. Diehl*, 128 Ohio St. 212, 214–215 (1934). The burden of proof that must be met before a public official can be removed is clear and convincing evidence. *McMillen*, *supra*, at 215. "Clear and convincing evidence means that measure or degree of proof that is more than a mere preponderance of the evidence but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and that will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Removal of Kuehnle*, 161 Ohio App.3d 399, 2005-Ohio-2373, ¶85, (12th Dist.) citing *In re Election of November 6, 1990 for the Office of Atty. Gen. of Ohio*, 58 Ohio St.3d 103, 106 (1991). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954); *see also In re Wingo*, 143 Ohio App.3d 652, 660 (4th Dist. 2001).

**{¶54}** Appellant argues the evidence does not support that she knowingly refused to keep the accounts of her office pursuant to R.C. 117.40. Appellant maintains a refusal involves "the mental determination not to comply." Appellant argues that rather than determining not to comply, she merely failed or neglected to perform her duties.

**{¶55}** The term "refuse" should be given its "common, everyday meaning," because it is not ambiguous, and it is not defined in Chapter 117. *See Am. Fiber Sys., Inc. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468, ¶24, quoting *State v. Dorso*, 4 Ohio St.3d 60, 62 (1983); *see also Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, ¶25 (citations omitted). "Refuse" is defined as to "[i]ndicate or show that one is not willing to do something." *Oxford University Press*, https://en.oxforddictionaries.com, (accessed June 26, 2018); *see also Webster's Ninth New Collegiate Dictionary*, 991 (1991) (Defining "refuse" as "to show or express unwillingness to do or comply with"). Further, "willingness" is defined as "the quality or state of being prepared to do something; readiness." *Id.*; *see also Webster's* at 1350 (Defining "willing" as "prompt to act or respond"). It follows that showing or expressing unpreparedness to do something constitutes a refusal to do something.

**{¶56}** Under Rule 117-2-02(A) of the Ohio Administrative Code, appellant was required to maintain an accounting system and accounting records sufficient to enable her office to "identify, assemble, analyze, classify, record and report its transactions, maintain accountability for the related assets (and liabilities, if generally accepted accounting principles apply), document compliance with finance-related legal and contractual requirements and prepare financial statements required by rule 117-2-03 of the Administrative Code."

17

{¶57} Further, when Mecca Township's 2016 records were determined to be unauditable, appellant's office was required to "follow the procedures established by the Auditor of State to bring its accounts, records, files, or reports into an auditable condition[.]" R.C. 117.41.

{¶58} Upon a review of the record, we find the evidence clearly and convincingly supports that appellant knowingly refused to keep the accounts of her office.

{¶59} Mecca Township's records contained significant deficiencies that rendered the Township unauditable. Appellant was made aware of the specific deficiencies by both Perry & Associates and the Auditor of State. After appellant was given ninety days to remedy the various problems in the records, she failed to make the appropriate corrections. At the time of the January 25, 2018 hearing, appellant had only addressed two of the deficiencies. Appellant herself acknowledged the deficiencies, but she attributed the deficiencies and her inability to remedy them to her lack of training. Appellant's purported lack of expertise and training does not excuse her mismanagement of the Township's records. Because it appears she was clearly not capable of performing the duties of her office, it was incumbent on her to get the training she needed to fulfill those duties. Appellant had various training opportunities, yet she blatantly refused to take advantage of them. Appellant's lack of cooperation, her unwillingness to comply, and her unpreparedness constitute a refusal to perform her duties.

{¶60} Appellant argues her efforts to hire LGS reflect her desire to correct the unauditable status. However, not only were the LGS services costly, those services could only address the bank reconciliations. Other issues rendering the Township unauditable would remain unaddressed.

**{¶61}** Appellant also alleges the Board of Trustees prevented her from attending training courses. Appellant maintains she was unable to get the initial training for newly elected Fiscal Officers required under R.C. 117.44 because the Board of Trustees refused to provide her with the letter verifying she was elected as Fiscal Officer.

**{¶62}** Contrary to appellant's contention, R.C. 117.44 does not impose training requirements on newly elected Fiscal Officers. Instead, under R.C. 117.44, the Auditor of State is required to facilitate certain education programs, including programs for newly elected Fiscal Officers. The statute provides that "the auditor of state shall hold training programs for persons elected for the first time as township fiscal officers * * * between the first day of December and the first day of April immediately following a general election[.]" Pursuant to R.C. 507.12(A), the Auditor of State is further required to conduct education programs and continuing education programs "for individuals elected or appointed for the first time to the office of township fiscal officer[.]" R.C. 507.12(B) imposes training requirements on first time Fiscal Officers, stating: "A newly elected or appointed township fiscal officer shall complete at least six hours of initial education programs before commencing, or during the first year of, office." It further provides that a Fiscal Officer who "participates in a training program held under section 117.44 of the Revised Code may apply those hours taken before commencing office to the six hours of initial education programs required under this division."

**{¶63}** Here, the trial court found that appellant "completed the required training for township fiscal officers as required by R.C. 507.12. However, Drawl did not attend additional fiscal officer training available through the auditor of state which is made available pursuant to R.C. 117.44 during 2016." The record supports this finding. In addition to Birkhimer and Jones, appellant herself testified she received training in

19

January 2017. This training was completed within appellant's first year in office. Further, the record reflects appellant had registered for at least three other training opportunities but did not attend the trainings. It is undisputed appellant refused other training opportunities that were offered to her. Accordingly, appellant's argument that she was "prevented" from receiving proper training is not well taken.

{¶64} The substantial deficiencies in the Township's records have inhibited the Township's ability to function properly, and at the time of trial, the records remained unauditable. We find the evidence clearly and convincingly supports the trial court's determination that appellant knowingly refused to keep the accounts of her office. The trial court did not err in ordering appellant's removal from office.

{¶65} Appellant's sole assignment of error is without merit.

{¶66} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.