[Cite as *State v. Henderson*, 2025-Ohio-2798.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                          :          APPEAL NO.   C-240434
                                                   TRIAL NO.    B-8500996
    Plaintiff-Appellee,            :

  vs.                                   :

JEROME HENDERSON,                       :          *JUDGMENT ENTRY*

    Defendant-Appellant.           :


This cause was heard upon the appeal, the record, and the briefs.

The judgment of the trial court is reversed and the cause is remanded for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 8/8/2025 per order of the court.**


**By:**_____
      **Administrative Judge**

[Cite as *State v. Henderson*, 2025-Ohio-2798.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240434 |
| | | TRIAL NO. | B-8500996 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| JEROME HENDERSON, | : | *O P I N I O N* | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: August 8, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Law Office of S. Adele Shank* and *S. Adele Shank*, for Defendant-Appellant.

**NESTOR, Judge.**

**{¶1}** Defendant-appellant Jerome Henderson appeals the judgment of the Hamilton County Court of Common Pleas dismissing his R.C. 2953.21(A)(1)(a)(iv) petition for postconviction relief, which sought to commute his death sentence to life imprisonment under Ohio's "serious mental illness" law set forth in R.C. 2929.025. Because we hold that the trial court's finding that Henderson had refused to submit to a serious-mental-illness ("SMI") evaluation is not supported by competent, credible evidence, we reverse the judgment of the lower court and remand this cause for further proceedings.

## I. *Factual and Procedural History*

**{¶2}** In April 1985, Henderson was charged with two counts of aggravated murder and other offenses in connection with the stabbing death of M.A. Prior to Henderson's jury trial, defense counsel requested the appointment of a psychiatrist to help him prepare for trial. The trial court overruled the motion because Henderson had not entered a plea of not guilty by reason of insanity and counsel had not argued that Henderson was incompetent to stand trial.

**{¶3}** Following the trial, the jury found Henderson guilty of two counts of aggravated murder, burglary, and attempted rape. The trial court continued the matter for sentencing. Prior to sentencing, the court appointed a psychologist to evaluate Henderson after his counsel had expressed concern about Henderson's competency. Dr. Schmidtgoessling evaluated Henderson and concluded that he was competent to continue with the sentencing proceedings.

**{¶4}** The sentencing court merged the murder counts and imposed the death penalty for the aggravated murder of M.A., and imposed separate prison terms for the other two offenses. Henderson's execution date is currently scheduled for October 21,

2026.

**{¶5}** Henderson unsuccessfully challenged his convictions and death sentence in a direct appeal to this court and the Ohio Supreme Court. *State v. Henderson*, 1987 Ohio App. LEXIS 5519 (1st Dist. Jan. 14, 1987); *State v. Henderson*, 39 Ohio St.3d 24 (1988).

**{¶6}** In 1990, Henderson filed a petition for postconviction relief challenging, among other things, the effectiveness of his trial counsel in investigating and presenting mitigation evidence at his sentencing. That petition noted counsel's failure to engage a forensic psychologist to help prepare mitigation evidence. In support of his petition, Henderson attached the affidavit of Dr. James Eisenberg, who opined that Henderson had a paranoid personality disorder. The common pleas court denied the petition, finding that when the court-appointed psychologist, Dr. Schmidtgoessling, had examined Henderson she "could find no mental disease." Henderson appealed from the denial of his petition, but his appeal was dismissed. *See State v. Henderson*, No. C-910146 (1st Dist. Apr. 8, 1991).

**{¶7}** On April 12, 2022, Henderson, through counsel that had been appointed to represent him in his federal habeas proceedings, filed a petition for postconviction relief based on a serious mental illness ("SMI petition") seeking to commute his death sentence. *See* R.C. 2929.025 and 2953.21(A)(1)(a)(iv). In the petition, Henderson's counsel indicated that Henderson had not yet been diagnosed with one of the four diagnoses that qualifies as an SMI, but because the SMI petition could be amended without leave for 180 days, counsel indicated that she would amend the petition once Henderson had been evaluated and diagnosed. Henderson's counsel also explained that she was filing the petition prior to Henderson's evaluation because the Ohio legislature had only provided a one-year window for defendants who had

4

previously been sentenced to death to file an SMI petition. Henderson's petition was filed on the last day of the one-year grace period. Because counsel argued that Henderson was "seriously mentally ill and incompetent to make the decisions required under Ohio's new SMI law," counsel asked the court to (1) order Henderson to undergo an SMI evaluation, or (2) stay the proceedings until Henderson could be restored to competency and then choose whether to undergo the evaluation.

{¶8} Shortly after Henderson's counsel had filed the SMI petition, Henderson moved, pro se, to dismiss it. As detailed in his motion, Henderson believes that he has an "actual innocence" claim that should be raised in a motion for leave to file a new-trial motion. He also contends that all his past (and presently appointed) counsel conspired or are conspiring against him and his efforts to exonerate himself.

{¶9} As a result, in October 2022, the common pleas court ordered Henderson to undergo a competency evaluation to be performed by Amanda Trice, Psy.D., who is affiliated with the University of Cincinnati's Division of Forensic Psychiatry. After the evaluation was completed, the common pleas court entered an order on March 14, 2023, finding Henderson "incompetent [to reject the appointment of counsel] and [ordered that Henderson's] counsel is to obtain an evaluation to determine whether Mr. Henderson meets the criteria in R.C. 2929.025(A)(1)(b) to change his death sentence to life imprisonment under R.C. 2953.21(A)(1)(a)(iv)." Dr. Trice was appointed to conduct the SMI evaluation but could not complete it because Henderson would not meet with her.

{¶10} Therefore, on August 1, 2023, Henderson's counsel moved the court to order that Henderson's competency be restored. Counsel argued that Henderson's failure to meet with the "mental-health doctor" could not be construed as a waiver or refusal to submit to an SMI evaluation as he was not only incompetent to make that

5

choice, but the record does not support a finding that he in fact knowingly refused the SMI evaluation. In support of the motion, Henderson submitted Dr. Trice's affidavit.

**{¶11}** Dr. Trice attested that she had gone to the prison on July 26, 2023, to conduct Henderson's SMI evaluation, but when she arrived, "prison staff informed me that [Henderson] had declined to meet with me. It was relayed to me by staff that he chose not to meet with a mental health doctor. No further explanation was given . . . [and I] could not speak with him." She also testified that she had reviewed Henderson's medical records in preparation for the SMI evaluation, noting that he had been previously diagnosed with mental disorders and appeared to exhibit characteristics that arise from an SMI. However, she attested that she could not complete the SMI evaluation based solely on his medical records and said that she also needed to meet with him.

**{¶12}** Henderson's counsel noted that there was no evidence proving that Henderson knew why a "mental health doctor" was there to meet with him. She maintained that he could not have knowingly waived or refused an SMI evaluation if he was unaware that the mental-health professional was there for that purpose. Further, Henderson's counsel presented evidence (prison records) that he had consistently refused mental-health treatment from prison authorities in the past and that he most likely thought that this was just another instance of the prison offering mental-health services to an inmate; not a court-ordered SMI evaluation.

**{¶13}** The State maintained that Henderson's SMI petition should be dismissed because under R.C. 2929.025(F)(1), if a person refuses to submit to an SMI evaluation, the court must find that person "not ineligible" for a sentence of death.

**{¶14}** In November 2023, the court filed an entry ordering Henderson be sent to

the Timothy B. Moritz Forensic Unit of the Twin Valley Behavioral Healthcare Facility to be restored to competency. Once he is restored, Henderson will be permitted to return to the court to pursue SMI proceedings, including being given another opportunity to participate in an SMI evaluation. If Henderson cannot be restored to competence, the Court will determine at that time, with input from the parties, the proper course for these proceedings.

**{¶15}** Eventually, the common pleas court learned that Henderson could not be assigned to Twin Valley. There were no open beds and the facility was unable to take a placement longer than two weeks, and it was not equipped to deal with the security needs of an inmate on death row. Accordingly, the court ordered, on March 15, 2024, that Henderson be restored to competency by prison representatives within 60 days. The court indicated that if Henderson's competency could not be restored, the court was going to dismiss the proceedings over the defense's objection.

**{¶16}** On June 25, 2024, the court found Henderson "not ineligible for a sentence of death due to serious mental illness" because "it is apparent to the Court that Petitioner continues to refuse to submit to an SMI evaluation and/or competency restoration efforts." At a hearing held on June 24, 2024, State's counsel and Henderson's counsel indicated they had both talked to the same person at the prison and, based on that conversation, counsel reported that someone (Henderson's counsel maintains it was not a mental-health professional) went to Henderson's cell and asked him if he wanted to be restored to competency and he replied, "No." Although the State indicated that it would not object to a successive SMI petition filed by Henderson if he eventually decided to undergo an SMI evaluation, the court rejected Henderson's request to put that agreement in the judgment entry.

{¶17} Henderson now appeals from the dismissal of his petition.

## II. Analysis

{¶18} In a single assignment of error, Henderson maintains that the common pleas court "erred when it found Henderson's failure to come out of his cell was a refusal to submit [to a SMI evaluation] that [effectively] waived his right to purse SMI relief under R.C. 2929.025 and R.C. 2953.21 when Henderson had already been found incompetent."

{¶19} In *State v. Fitzpatrick*, 2022-Ohio-4381 (1st Dist.), this court discussed the new SMI law:

Effective April 21, 2021, a person who has been diagnosed with certain specified mental disorders and meets the statutory criteria is ineligible for the death penalty. R.C. 2929.025(E)(1). This law was made retroactive and applies to defendants who already had been sentenced to death at the time the law became effective. R.C. 2953.21(A)(1)(a)(iv).

. . .

Under the recently enacted SMI statute, a person has a 'serious mental illness' if (1) he or she has been diagnosed with schizophrenia, schizoaffective disorder, bipolar disorder, or delusional disorder and (2) shows by a preponderance of the evidence that at the time of the aggravated murder, those conditions, while not meeting the standard to be found not guilty by reason of insanity or the standard to be found incompetent to stand trial, nevertheless significantly impaired the person's capacity to exercise rational judgment with respect to conforming the person's conduct to the requirements of the law or

8

appreciating the nature, consequences or wrongfulness of the person's conduct. R.C. 2929.025 (A) and (D)(1).

R.C. 2953.21(A)(1)(a)(iv) and 2953.21(A)(3)(b) allow a person convicted and sentenced to death before the effective date of R.C. 2929.025 to file a postconviction petition asking the court to vacate the sentence up to one year from the effective date of the statute. *State v. Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, 179 N.E.3d 1216, ¶ 196 (Donnelly, J., concurring). The filing of the SMI petition constitutes a 'waiver of any right to be sentenced under the law that existed at the time the offense was committed and constitutes consent to be sentenced to life imprisonment without parole * * *.' R.C. 2953.21(A)(3)(b).

*Id.* at ¶ 1, 7-8.

**{¶20}** Pertinent to this appeal, R.C. 2929.025(F)(1) provides that if a person raises the issue of an SMI at the time of the commission of the offense, "the court shall order an evaluation of the person. . . . If the person refuses to submit to an evaluation ordered under this division, the court shall issue a finding that the person is not ineligible for a sentence of death due to serious mental illness."

**{¶21}** Here, the court found that Henderson had refused to submit to the SMI evaluation, and thus determined that he was "not ineligible for a sentence of death due to serious mental illness" and dismissed his petition. Henderson maintains that this finding is not supported in the record. We agree.

**{¶22}** When considering a petition for postconviction relief, "[t]he Supreme Court of Ohio has stated that we should conduct a 'plain and adequate review' based upon the trial court's findings of fact and conclusions of law." *State v. Fuller*, 1995 Ohio App. LEXIS 5701, *5 (4th Dist. Nov. 21, 1995), quoting *State ex rel. Kaldor v.*

9

*Court of Common Pleas of Belmont Cty.*, 9 Ohio St.3d 114 (1984). Accordingly, this court must assess whether the trial court's findings are supported by competent, credible evidence in the record. *State v. Gondor*, 2006-Ohio-6679, ¶ 58.

**{¶23}** Briefly, before considering the evidence underlying the lower court's finding, we note that the court also dismissed Henderson's petition based on its finding that Henderson was refusing competency-restoration efforts. But R.C. 2929.025 does not permit a finding of "not ineligible for the death penalty due to a serious mental illness" because a petitioner was not cooperating with competency-restoration efforts. Thus, we hold that dismissing Henderson's SMI petition on that basis was erroneous. *See State v. Spivey*, 2014-Ohio-72 (7th Dist.) (a petitioner does not have to be competent to proceed with postconviction proceedings).

**{¶24}** After thoroughly reviewing the record, we hold that the court's finding that Henderson refused to submit to an SMI evaluation is not supported by competent, credible evidence in the record, especially considering that this finding effectively amounts to a finding that Henderson waived his statutory postconviction right to seek to have his death sentence commuted to life imprisonment. To effectively waive a constitutional or statutory right, that waiver must be made knowingly. *State v. King*, 70 Ohio St.3d 158, 160 (1994), citing *Barker v. Wingo*, 407 U.S. 514, 529 (1972).

**{¶25}** To knowingly refuse something, one must know what that something is. *See State v. Drawl*, 2018-Ohio-4084, ¶ 55 (noting that "refuse" means that one is not willing to do "something"). Here, the record is devoid of evidence that Henderson knew that Dr. Trice was at the prison to meet with him for an SMI evaluation, an evaluation that could potentially lead to his death sentence being commuted to life in prison. Dr. Trice testified that she was not allowed to speak with Henderson and thus, there was no evidence that Henderson had been told Dr. Trice was there to conduct

the court-ordered SMI evaluation and that Henderson then refused to undergo the evaluation.

{¶26} Further, the only evidence in the record that the trial court possibly relied on to find that Henderson had refused to submit to an SMI evaluation was hearsay testimony from prison staff contained in Dr. Trice's affidavit. But even the hearsay testimony did not indicate that Henderson was refusing an SMI evaluation; only that he did not want to meet with a mental-health worker. Given the significance of what Henderson was alleged to have refused, there must be some indication in the record that Henderson was told that Dr. Trice was there specifically to evaluate him for his SMI petition and the consequence of refusing to forego that evaluation.

{¶27} Because there is no competent, credible evidence in the record to demonstrate that Henderson knowingly refused to submit to an SMI evaluation, there was no basis for the court to determine that Henderson was "not ineligible for the death penalty based on a serious mental illness." Accordingly, the common pleas court improperly dismissed Henderson's petition.

{¶28} Henderson's single assignment of error is sustained.

### III. Conclusion

{¶29} Having sustained the assignment of error, we reverse the lower court's judgment dismissing Henderson's petition and remand the cause for further proceedings, including another court-ordered SMI evaluation, consistent with this opinion and the law.

Judgment reversed and cause remanded.

BOCK, P.J., and MOORE, J., concur.