[Cite as *Edwards v. Galluzzo*, 2024-Ohio-2005.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| ROBIN K. EDWARDS, CHAMPAIGN COUNTY TREASURER | : | |
| | : | C.A. No. 2023-CA-21 |
| Appellees | : | |
| | : | Trial Court Case No. 2022 CV 00033 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| MICHAEL GALLUZZO, ET AL. | : | Court) |
| | : | |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 24, 2024

. . . . . . . . . . .

MICHAEL GALLUZZO, Pro Se Appellant

JANE A. NAPIER, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

**{¶ 1}** Defendant-Appellant Michael Galluzzo appeals from an order of the Champaign County Common Pleas Court, which granted summary judgment in favor of Robin Edwards0. in her official capacity as Champaign County Treasurer ("Treasurer").

For the following reasons, we will affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 2} On March 17, 2022, the Champaign County Prosecutor's Office filed a delinquent tax foreclosure complaint on behalf of the Treasurer against Michael Galluzzo ("Galluzzo"), Larry Galluzzo ("Larry"), and the Unknown Spouse of Larry Galluzzo ("Unknown Spouse"), to foreclose on two parcels of real property located at 307 East Main Street in St. Paris, Ohio, which is located in Champaign County. The complaint alleged that Galluzzo was the record owner of the parcels and that Larry might have had an interest in the property by virtue of a $75,000 lien, which was recorded September 26, 2011. Because the recorded deed did not identify whether Larry was married, the complaint also included the Unknown Spouse as an individual who may have had an interest by virtue of any dower.

{¶ 3} The complaint further alleged that the Champaign County Auditor, pursuant to R.C. 5721.13, had filed a delinquent land tax certificate for the parcels with the Champaign County Prosecutor's Office. According to the certificate, a total amount of $6,251.76, together with unpaid interest, court costs, and penalties, was owed and due. The complaint alleged that the taxes had been delinquent for at least one year after having been certified as delinquent and that the State of Ohio had the first and best lien on the real property pursuant to R.C. 5721.10. The complaint sought an order that the liens on the property be marshaled, that the property be sold by the Champaign County Sheriff pursuant to R.C. 5721.19, and that the amount due, including any additional taxes, assessments, or penalties accrued during the pendency of the action, be paid to the

Treasurer from the proceeds of the sale of the parcels.

{¶ 4} An October 18, 2021 certificate of title, which identified the two parcels in detail, was attached to the filing of the complaint. The certificate indicated that the parcels were vested in Galluzzo by virtue of a September 19, 2011 Quit Claim Deed from Larry, which was recorded on September 20, 2011, with the Champaign County Recorder's Office. According to the certificate, there was a lien on the property held by Larry in the original amount of $75,000, which was recorded on September 26, 2011 with the Champaign County Recorder's Office. The total taxes for tax year 2020 for the two parcels amounted to $543.72 per half year, with a 2020 Homestead Reduction of $188.38 per half year, with a total arrearage at that time of $5,590.

{¶ 5} Galluzzo was served with the complaint by certified mail on April 4, 2022. Although a summons was sent to Larry's last known address in Cincinnati, Ohio, Larry and the Unknown Spouse were also served by publication in the Urbana Daily Citizen, a daily newspaper of general circulation in Urbana, which is in Champaign County. Notice of the complaint and summons was posted once a week for three consecutive weeks with service completed on April 8, 2022. Galluzzo was also listed in the publication.

{¶ 6} On May 5, 2022, Galluzzo filed an answer, "in propria persona," on behalf of himself only, denying all the allegations set forth in the complaint (hereinafter "Answer"). Galluzzo asserted several defenses. He stated that: the court had neither subject matter nor personal jurisdiction; the Treasurer lacked the authority to assess and levy taxes; the Treasurer failed to state a claim upon which relief could be granted; the complaint failed to identify the real party in interest; the Treasurer lacked authority to collect property taxes;

and the Treasurer lacked authority to assess and collect property taxes for school funding or on " 'Indian Land', i.e., Ohio." Galluzzo's Answer was signed in his name only.

{¶ 7} That same day, Galluzzo filed a "WRIT OF COUNTERCLAIM/CROSS CLAIM" (hereinafter "Counterclaim") requesting preliminary and injunctive relief, a declaratory judgment, and a request for damages. Galluzzo's Counterclaim also named as parties Karen T. Bailey, the Champaign County Auditor ("Auditor"), and Glenda L. Bayman, the Champaign County Recorder ("Recorder"). No praecipes for service were filed relating to Galluzzo's Counterclaim.

{¶ 8} On May 31, 2022, the Treasurer moved to strike Galluzzo's Counterclaim or, in the alternative, for a more definite statement. In response, on June 15, 2022, Galluzzo filed a motion for leave to file an amended counterclaim.

{¶ 9} Without receiving leave of court, Galluzzo filed an "AMENDED WRIT OF COUNTERCLAIM/THIRD PARTY CLAIM" (hereinafter "Amended Counterclaim") on July 7, 2022. Galluzzo filed a praecipe with the Amended Counterclaim to be served by certified mail.

{¶ 10} On August 4, 2022, the Treasurer filed a motion to dismiss or, in the alternative, to strike Galluzzo's Amended Counterclaim. After being granted additional time to respond, Galluzzo filed a response.

{¶ 11} On September 20, 2022, the trial court issued a decision granting the Treasurer's motion to dismiss the Amended Counterclaim with prejudice, finding that the Amended Counterclaim failed to state a claim upon which relief could be granted. Galluzzo attempted to appeal that decision to this court, but we dismissed it for lack of a

final appealable order.

{¶ 12} On January 31, 2023, the Treasurer filed a motion for summary judgment against Galluzzo and for default judgment against Larry and the Unknown Spouse. Accompanying the motion was a notarized affidavit of the Treasurer submitted in her official capacity. In addition to the information alleged in the complaint, the affidavit also provided that the parcels had been first certified delinquent on December 31, 2015, and had remained delinquent since that time. The affidavit also stated that no tax certificate respecting the property had been sold in accordance with R.C. 5721.32 or R.C. 5721.33 and taxes were not the subject of a valid delinquent tax contract under R.C. 323.31. As of the date of filing the complaint, Galluzzo owed $6,251.76 in delinquent taxes, special assessments, interest, and penalties to the Treasurer. The trial court, through a magistrate, issued an entry setting a hearing on the Treasurer's motion for March 9, 2023.

{¶ 13} On February 27, 2023, Galluzzo filed a response to the motion for summary judgment in which he also included a response to the motion for default judgment against Larry and the Unknown Spouse. Galluzzo argued that the Treasurer lacked jurisdiction to bring the action, that the complaint failed to identify the proper party of interest, and that his Answer to the complaint previously filed was also made on behalf of Larry and the Unknown Spouse. An unsigned and unfiled copy of Galluzzo's Answer was attached in support of his response.

{¶ 14} That same day, Galluzzo filed a request for interrogatories, admissions, and production of documents. He also filed a motion to disqualify the magistrate based on alleged bias against Galluzzo and his family and a "lack of basic knowledge in Law." The

motion for disqualification was based on a prior civil case in which the magistrate had ruled against Galluzzo. The trial court overruled Galluzzo's motion to disqualify the magistrate.

{¶ 15} Neither Larry, the Unknown Spouse, nor a representative for either appeared for the March 9, 2023 hearing before the magistrate. Although Galluzzo attempted to appear on their behalf, the magistrate did not permit it, determining that Galluzzo was not a licensed attorney who could appear on their behalf. The magistrate granted the Treasurer's motion for summary judgment against Galluzzo and granted the motion for declaratory judgment against Larry and the Unknown Spouse.

{¶ 16} Galluzzo filed objections to the magistrate's decision, which were overruled by the trial court. Having granted the Treasurer's motion for summary judgment and motion for default judgment, the trial court awarded the Treasurer judgment against Galluzzo in the amount of $6,251.76, plus additional taxes, interest, penalties, and charges that might accrue during the pendency of the matter, costs that had been or would be incurred for preservation of the property, and court costs. The trial court further ordered that failure to pay the costs imposed within three days after the filing of the entry would foreclose Galluzzo's equity of redemption in the property and that the property would be ordered sold according to law.

{¶ 17} Galluzzo filed a timely appeal, raising four assignments of error.

{¶ 18} Before considering Galluzzo's assignments of error, we note that Galluzzo attached some documents to his reply brief for this court to consider on appeal. He submitted a purported copy of a release of lien for the property at issue from his brother

Larry along with documents appearing to relate to an unrelated federal habeas case involving Galluzzo. "An appellate court's review in a direct appeal is limited to the materials in the record and the facts and evidence presented to the trial court." *Yates v. Kanani*, 2d Dist. Montgomery No. 23492, 2010-Ohio-2631, ¶ 24. Accordingly, these documents will not be considered. Moreover, a reply brief is not intended to allow a party to advance new arguments not previously raised. *Am. Fiber Sys., Inc. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468, 928 N.E.2d 695, ¶ 21. Any new arguments Galluzzo has attempted to raise in his reply brief will likewise not be considered.

## II. First Assignment of Error

{¶ 19} Galluzzo's first assignment of error states as follows:

As a matter of Law, the court committed plain error when it failed to adhere to the Constitutional requirement of an Oath of Office for persons appointed as a judicial officer of the several states pursuant to Article VI, clause 3 of the Constitution of the United States of America and Article XV, Section 7 of the Ohio Constitution.

{¶ 20} Galluzzo argues that the trial court committed plain error by allowing the magistrate to preside over the case without an oath of office on file with the clerk of courts. Galluzzo did not raise this issue until he filed his objections to the magistrate's decision, wherein Galluzzo alleged that it "recently came to [his] attention" that the magistrate did not have an oath of office on file as required by the Ohio Rules of Superintendence for the Courts Rule 19(D)(1). Accordingly, Galluzzo argued that, because the magistrate lacked an oath of office on file, then the magistrate lacked jurisdiction to preside over the

case and its decision was void ab initio.

{¶ 21} In overruling Galluzzo's objections, the trial court found that Sup.R. 19(D) did not apply to appointments of magistrates that occurred prior to January 1, 2018, the effective date of the rule. Because the magistrate in this case was appointed on February 5, 2013, the requirement did not apply.

{¶ 22} Galluzzo's argument in the trial court was predicated on the requirements set forth in the Ohio Rules of Superintendence for the Courts, not Article VI, clause 3 of the United States Constitution or Article XV, Section 7 of the Ohio Constitution. Parties may not raise any new issues or legal theories for the first time on appeal that were not raised in the lower court. *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 30. Accordingly, Galluzzo waived this argument he has raised for the first time on appeal, and we will only review this issue for plain error.

{¶ 23} When plain error is contemplated, "we require a showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, citing *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, ¶ 29. "The burden of demonstrating plain error is on the party asserting it." *Id.*, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17.

{¶ 24} Article VI, clause 3 of the United States Constitution provides, in relevant part, that "all executive and judicial Officers, both of the United States and of the several

States, shall be bound by Oath or Affirmation, to support this Constitution[.]" Article XV, Section 7 of the Ohio Constitution states: "Every person chosen or appointed to any office under this state, before entering upon the discharge of its duties, shall take an oath or affirmation, to support the constitution of the United States, and of this state, and also an oath of office." While both the United States Constitution and the Ohio Constitution require a judicial officer to take an oath or affirmation, neither requires a magistrate's oath of office be filed with the clerk of courts.

{¶ 25} The requirement that a magistrate submit his or her oath of office to the clerk of courts is established by Sup.R. 19(D). The Rules of Superintendence for the Courts of Ohio are promulgated pursuant to Article IV, Section 5(A)(1) of the Ohio Constitution, which grants the Supreme Court general superintendence over all courts in the state. Sup.R. 1(B). Pursuant to Sup.R. 19(D), upon the appointment of a magistrate to a court or a division of a court, the magistrate shall take an oath of office administered by the administrative judge of that court or division. Sup.R. 19(D)(1). Within 30 days of the appointment, the magistrate must file a certificate of oath, signed by the administrative judge who administered the oath, with the clerk of courts in which the magistrate serves. Sup.R. 19(D)(2). The effective date of the amendments to Sup.R. 19 that implemented the oath requirement, was January 1, 2018. Sup.R. 99 (EEEE). According to the Ohio Supreme Court, "[a]lthough magistrates appointed prior to Jan. 1, 2018 are not subject to the oath requirement, the Office of Attorney Services encourages all magistrates - regardless of when they are appointed - be given the oath and file it." Administrative Judges Notification of Magistrate Appointments and Terminations, https://www.

supremecourt.ohio.gov/attorneys/magistrate-registration/magistrate-appointments-and-terminations/ (accessed February 26, 2024).

{¶ 26} There was no allegation by Galluzzo in the trial court or indication in the record that the magistrate never took an oath of office, only that an oath of office had not been filed with the clerk's office.   While a judge of a county court has long been required to take an oath of office and file it with the clerk of courts pursuant to statutory requirements, the same cannot be said for a magistrate.   Prior to the enactment of Sup.R. 19(D), as a subordinate officer of the court, there was no requirement that the magistrate's oath be on file in order for the magistrate to hear a case.   *Baker v. Paluch*, 9th Dist. Summit No. 22078, 2004-Ohio-6744, ¶ 10.   Accordingly, the trial court's decision finding that the oath filing requirement in Sup.R. 19(D) did not apply was not error, plain or otherwise.

{¶ 27} Galluzzo's first assignment of error is overruled.

### III.   Second Assignment of Error

{¶ 28} Galluzzo's second assignment of error states the following:

As a matter of Law, the court committed plain error when it failed to dismiss

the action under a default and estoppel by silence against the Plaintiff.

{¶ 29} In this assignment of error, Galluzzo explains that in a prior case involving the same set of facts and circumstances, he filed an answer and a "Notice of Default," neither of which the Treasurer responded to prior to the trial court's dismissal of that cause.   According to Galluzzo, because the Treasurer failed to respond to his answer and "Notice of Default" in the prior case, the Treasurer acquiesced to the assertions in

Galluzzo's filings, which he contends warrant dismissal in this case. We do not agree.

**{¶ 30}** The first time Galluzzo mentioned a prior case potentially affecting the Treasurer's ability to succeed on summary judgment was in his objections to the magistrate's decision granting summary judgment. He alleged that when the Treasurer failed to respond to his filings in the prior case, it initiated an estoppel by silence of any further administrative or judicial action against the Defendants.

**{¶ 31}** The prior case to which Galluzzo refers is not in our record. While Galluzzo referenced the prior case in his objection, he never presented any evidence to support his position. As noted above, this court's review is limited to the record on appeal. *State v. Ishmail*, 54 Ohio St.2d 402, 406, 377 N.E.2d 500 (1978). Here, the record includes only scant details about the prior case and insufficient information for us to consider whether the prior case precluded the Treasurer from pursuing the present action. Moreover, because the pleadings and trial court's decisions on those pleadings in any prior case are not properly before us, we cannot consider error that is predicated on their existence. As a result, we reject Galluzzo's alleged error because it is based on evidence that is not in the record.

**{¶ 32}** Moreover, Galluzzo did not set forth in his Answer the affirmative defense of estoppel. *See* Civ.R. 8(C) (identifying estoppel as an affirmative defense). "When a party fails to assert a claim for estoppel in the pleadings, the party may not raise the affirmative defense of estoppel via a separate procedural mechanism at a subsequent point in the proceedings." (Citation omitted.) *Brunswick Hills Twp. v. G & K Constr., Inc.*, 9th Dist. Medina No. 14CA0017-M, 2016-Ohio-57, ¶ 6. Accordingly, Galluzzo could

not rely on estoppel when he objected to the magistrate's decision and cannot now rely upon it on appeal.

{¶ 33} Finally, "[t]o constitute an estoppel by silence there must be something more than an opportunity to speak. There must be an obligation." *Wiser v. Lawler*, 189 U.S. 260, 270, 23 S.Ct. 624, 47 L.Ed. 802 (1903). But the Treasurer had no obligation to respond to Galluzzo's answer unless the trial court ordered the Treasurer to do so. Civ.R. 7(A). There is no evidence in the record to suggest that the trial court required the Treasurer to respond to Galluzzo's answer, either in this case or in a prior case. Absent any obligation of the Treasurer to reply, Galluzzo cannot establish that estoppel by silence even applied.

{¶ 34} Galluzzo's second assignment of error is overruled.

### IV. Third Assignment of Error

{¶ 35} Galluzzo's third assignment of error states:

As a matter of Law, the court committed plain error and demonstrated bias and prejudice in favor of the Prosecution when it asserted that Defendant Michael Anthony Galluzzo could not answer for other defendants or raise any challenge to the Treasurer's service by publication because he did not have a "license to practice law in Ohio" while at the same time ignoring the fact that the assistant prosecutor, as well, does not have a "license to practice law in Ohio."

{¶ 36} Galluzzo argues that the trial court erred in granting default judgment to the Treasurer against Larry and the Unknown Spouse. We find no error for several reasons.

First, Galluzzo filed the notice of appeal on his own behalf, "in propria persona." "In propria persona" means "in his own person." *Black's Law Dictionary* 1414 (10th Ed.2014). No notice of appeal was filed by Larry or the Unknown Spouse. Any error relating to Larry or the Unknown Spouse would only affect the validity of the judgment as to Larry and/or the Unknown Spouse, not Galluzzo, and therefore he cannot raise any arguments on their behalf. *KeyBank Natl. Assn. v. Harrison*, 2d Dist. Montgomery No. 26580, 2015-Ohio-3264, ¶ 27. "It is fundamental that appeal lies only on behalf of a party aggrieved. Unless an appellant can show that *his rights* have been invaded, no error is shown to have been committed by the court or body which entered the final order." (Emphasis sic.) *Ohio Contract Carriers Assn. v. Pub. Util. Comm.*, 140 Ohio St. 160, 161, 42 N.E.2d 758 (1942). Galluzzo has neither established nor even argued that he personally was prejudiced as a result of the trial court's decision granting default judgment against Larry and the Unknown Spouse. Accordingly, no error is shown.

{¶ 37} Second, although Galluzzo claims that he represented his family members and himself in this matter, each of his filings indicated that he was filing as an individual "in propria persona." All documents were signed in his name only and not on behalf of any of his family members. No pleadings or motions were filed on behalf of Larry or the Unknown Spouse. "Civ.R. 55 generally authorizes the entry of a default judgment based on the fact that the defending party has failed to plead or otherwise defend against the claims." *Brookville Ents., Inc. v. Seibel*, 2d Dist. Montgomery No. 28561, 2020-Ohio-948, ¶ 23. Based on the fact that Galluzzo's filings in the trial court were made only on his own behalf, and in the absence of any pleadings or motions from Larry and the

Unknown Spouse defending against the Treasurer's action, we cannot conclude that the trial court erred in granting default judgment against them.

{¶ 38} Finally, Galluzzo claims that he "represent[s] myself and family members in this matter," and therefore his Answer to the complaint was for himself and for Larry and the Unknown Spouse. However, as the trial court noted, Galluzzo has never been admitted to the practice of law in Ohio and is not otherwise authorized to practice law in this state. Therefore, he could not have represented Larry or the Unknown Spouse in the trial court. Absent an answer or any other effort to defend by Larry or the Unknown Spouse, the trial court did not err in granting default judgment.

{¶ 39} While Galluzzo seems to argue that a state cannot regulate who may practice law, he is mistaken. "Section 2(B)(1)(g), Article IV of the Ohio Constitution gives the Supreme Court power over all matters relating to the practice of law. Pursuant to the Constitution and to secure the public's interest in competent legal representation, [the Supreme Court has] promulgated rules with respect to admission to the practice of law, rules to govern the conduct of those admitted to the practice, and rules to ensure that those admitted maintain their knowledge and skills through continuing legal education." *Disciplinary Counsel v. Coleman*, 88 Ohio St.3d 155, 157, 724 N.E.2d 402 (2000). The practice of law is restricted to licensed practitioners as a means to "protect the public against incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation." *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40. Moreover, "[t]he practice of law is not limited to appearances in court. It also embraces the preparation

of papers that are to be filed in court on another's behalf and that are otherwise incident to a lawsuit." *Trumbull Cty. Bar Assn. v. Legal Aid State Servs. Inc.*, 109 Ohio St.3d 93, 2006-Ohio-1931, 846 N.E.2d 35, ¶ 7.

**{¶ 40}** The "unauthorized practice of law" includes "[t]he rendering of legal services for another by any person not admitted to practice in Ohio under Rule I of the Supreme Court Rules for the Government of the Bar" unless certain exceptions apply; none of the exceptions apply here.   Gov.Bar R. VII(31)(J)(1)(a).   It matters not that Galluzzo claims he did not receive payment from Larry or the Unknown Spouse for his services.   Because Galluzzo could not prepare or file any documents on behalf of Larry and the Unknown Spouse as an unlicensed attorney, the trial court did not err in granting the default judgment.

**{¶ 41}** Galluzzo's third assignment of error is overruled.

## V.   Fourth Assignment of Error

**{¶ 42}** Galluzzo's final assignment of error states:

As a matter of Law, the court committed plain error when it failed to require

the Plaintiff to place jurisdiction and standing on the record when challenged

by the Defendants.   The Plaintiff provided no Constitutional authority for

the Complaint and failed to identify the proper Defendants in the action.

**{¶ 43}** Although not entirely clear from his brief, it appears that Galluzzo is arguing that the trial court erred in entering summary judgment against him.   Galluzzo reasserts

the issues he raised in his Answer, which he incorporated into his response to the Treasurer's motion for summary judgment. Galluzzo first argues that the trial court lacked jurisdiction and standing because the Treasurer failed to enter jurisdiction into the record. Second, the trial court lacked personal jurisdiction over Galluzzo because he "identified himself as the beneficiary Michael Anthony Galluzzo, upper and lower case name, the flesh and blood man and stated that he was not the named defendant MICHAEL GALLUZZO, all caps, the Ens Legis entity, the state created, *cestui que* instrument, corporate entity." Brief of Appellant at p. 11. Third, the Champaign County Treasurer lacked authority under the Ohio Constitution to collect property taxes from private people. Fourth, the Treasurer was "attempting to collect taxes in private script, i.e., federal reserve accounting units (notes) in violation of the Constitutional requirements of Article I, Section 10, clause 1[.]" We are not persuaded by Galluzzo's arguments and conclude that the trial court properly granted summary judgment.

### a. Summary Judgment Standard

{¶ 44} We review a trial court's ruling on a summary judgment motion de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42. Under Civ.R. 56(C), a movant is entitled to summary judgment when it is demonstrated "that there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party." (Citation omitted.) *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 617, 687 N.E.2d 735 (1998).

{¶ 45} "[T]he moving party bears the initial responsibility of informing the trial court

of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The burden then shifts to the defending party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. If the defending party does not so respond, summary judgment, if appropriate, may be entered in favor of the party seeking affirmative relief. *Id.* The non-moving party may not rest upon the mere allegations or denials in his pleadings, but instead must submit evidence as outlined in Civ.R. 56(C). *Id.*

### b. Summary Judgment Was Properly Granted

{¶ 46} The trial court found that no genuine issue of material fact existed and that the Treasurer was entitled to judgment as a matter of law. We agree with the trial court.

{¶ 47} "It is elementary that the power and right to tax, for any reason, rest with the government, whether that government be federal, state, or municipal in character. The power and right to tax give rise to the power and right to collect and police that tax." *S.S. Kresge Co. v. Bowers*, 2 Ohio St.2d 113, 116, 206 N.E.2d 905 (1965). "The foundation of the state's taxing authority is in Section 1, Article II, of the Ohio Constitution, which confers general legislative power upon the General Assembly." *Callison v. Huelsman*, 168 Ohio App.3d 471, 2006-Ohio-4395, 860 N.E.2d 829, ¶ 7 (2d Dist.), citing *Haefner v. Youngstown*, 147 Ohio St. 58, 68 N.E.2d 64 (1946). "Article XII, Section 2 of the Ohio Constitution empowers the General Assembly to determine the subjects and methods of taxation and exemption of real and personal property, limited only by Article I of the Ohio

Constitution." (Citations omitted.) *Sullivan v. Monument Homes Inc.*, 10th Dist. Franklin No. 19AP-814, 2020-Ohio-2846, ¶ 13.

{¶ 48} R.C. Chapters 323, 5709, and 5721, were enacted by the General Assembly regarding property taxes. R.C. 5709.01(A) provides: "All real property in this state is subject to taxation, except only such as is expressly exempted therefrom." R.C. 323.12(A) further requires that "[e]ach person charged with taxes shall pay to the county treasurer the full amount of such taxes or shall pay one-half of the current taxes together with the full amount of any delinquent taxes on or before the thirty-first day of December * * *." Property taxes for each year attach to and become a lien on the property on the first day of January of that year, and continue until such taxes, including any penalties, interest, or other charges accruing thereon, are paid. R.C. 323.11. "[O]nce tax payments are untimely, R.C. 323.25 provides that the county treasurer shall enforce a resulting lien for real property taxes owed in a civil action for the sale of such property, in the court of common pleas and in the same way in which mortgage liens are enforced." *Callison* at ¶ 8.

{¶ 49} "The procedure to be followed with regard to foreclosure of delinquent land is found in R.C. 5721.13 and R.C. 5721.18." *Alt v. Pazmino-Stanfield*, 3d Dist. Seneca No. 13-17-34, 2018-Ohio-2346, ¶ 18. R.C. 5721.13(A) provides that:

> One year after certification of a delinquent land list, the county auditor shall make in duplicate a certificate, to be known as a delinquent land tax certificate, of each delinquent tract of land, * * * upon which the taxes, assessments, charges, interest, and penalties have not been paid,

describing each tract of land or city or town lot in the same manner as it is described on the delinquent tax list and the amount of the taxes, assessments, charges, interest, and penalties due and unpaid, and stating that the amount has been certified to the county prosecuting attorney as delinquent. The certificate shall be signed by the auditor or his deputy, and the original certificate shall be filed with the prosecuting attorney.

{¶ 50} Upon the delivery to the prosecuting attorney by the county auditor of a delinquent land tax certificate, or of a master list of delinquent land tracts, the county prosecuting attorney:

shall institute a foreclosure proceeding under this section in the name of the county treasurer to foreclose the lien of the state, in any court with jurisdiction * * *, unless the taxes, assessments, charges, penalties, and interest are paid prior to the time a complaint is filed, or unless a foreclosure or foreclosure and forfeiture action has been or will be instituted under section 323.25, sections 323.65 to 323.79, or section 5721.14 of the Revised Code.

R.C. 5721.18.

{¶ 51} The foreclosure proceedings initiated pursuant to R.C. 5721.18 may be instituted in the common pleas court for the county in which the property is located. The judicial power of the state is vested in "such other courts inferior to the supreme court as may from time to time be established by law." Article IV, Section 1, Ohio Constitution. The Ohio Constitution specifically established Ohio's common pleas courts, which are

endowed with "original jurisdiction over all justiciable matters * * * as may be provided by law." Article IV, Section 4(B), Ohio Constitution. Jurisdiction has been "provided by law" pursuant to R.C. 2305.01, which states that courts of common pleas have "original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts." The Ohio Supreme Court "has long held that the court of common pleas is a court of general jurisdiction, with subject-matter jurisdiction that extends to 'all matters at law and in equity that are not denied to it.' " *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 20, quoting *Saxton v. Seiberling*, 48 Ohio St. 554, 558-559, 29 N.E. 179 (1891). The Ohio Supreme Court has "also long held that actions in foreclosure are within the subject-matter jurisdiction of a court of common pleas." *Id.*, citing *Robinson v. Williams*, 62 Ohio St. 401, 408, 57 N.E. 55 (1900).

{¶ 52} Accordingly, the Champaign County Court of Common Pleas had subject matter jurisdiction to hear Galluzzo's delinquent tax foreclosure action for the parcels located within Champaign County. Moreover, the Champaign County Prosecuting Attorney was authorized by statute to institute the delinquent tax foreclosure proceedings on behalf of the named county treasurer. Because the Treasurer had a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy, the Treasurer had standing to invoke the jurisdiction of the court to proceed in a foreclosure action. *Davet v. Sheehan*, 8th Dist. Cuyahoga No. 101452, 2014-Ohio-5694, ¶ 22-23.

{¶ 53} In this case, the Champaign County Prosecutor's Office filed a delinquent tax foreclosure complaint on behalf of the duly elected and acting Champaign County

Treasurer against Galluzzo, Larry, and the Unknown Spouse, to foreclose on two parcels of real property located in Champaign County, which were described in detail. Evidence presented by the Treasurer demonstrated that Galluzzo was the record owner of the parcels by virtue of a Quit Claim Deed recorded on September 20, 2011, in the Champaign County Recorder's Office. Pursuant to the provisions of R.C. 5721.13, the Champaign County Auditor filed a delinquent land tax certificate for the parcels with the Champaign County Prosecutor's Office indicating that the taxes had been delinquent and had not been paid for at least one year after having been certified delinquent. Notably, the taxes had been delinquent since December 31, 2015, and had remained delinquent since that time. A total amount of $6,251.76, together with unpaid interest, court costs, and penalties, was owed and due at the time of the filing of the complaint. The State of Ohio had the first and best lien on the property pursuant to R.C. 5721.10. Moreover, no tax certificate respecting the property had been sold in accordance with R.C. 5721.32 or R.C. 5721.33 and taxes were not the subject of a valid delinquent tax contract under R.C. 323.31.

{¶ 54} Galluzzo was served with the complaint by certified mail and via publication as provided for in R.C. 5721.18(A)(1) and was identified in the complaint by name and address. Although Galluzzo claims that the complaint identified him with all capital letters, this is not accurate. *See* Complaint. To the extent that the complaint did not include Galluzzo's middle name, we do not find that to have been necessary to properly identify Galluzzo and notify him that he was an interested party in question. Notably, the quit claim deed for the property identified the named titleholder of record as "Michael

Galluzzo," not "Michael Anthony Galluzzo." Finally, to the extent that Galluzzo's argument relies on "sovereign citizen" type arguments, it is wholly frivolous. "Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' 'a secured party creditor,' or a 'flesh and blood human being,' that person is not beyond the jurisdiction of the courts." *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir.2011). Galluzzo was sufficiently apprised of notice of the pendency of the action and afforded an opportunity to present his objections. *In re Foreclosure of Liens for Delinquent Taxes*, 62 Ohio St.2d 333, 405 N.E.2d 1030 (1980), paragraph one of the syllabus. Therefore, his due process rights were satisfied, and the trial court had jurisdiction to proceed with the foreclosure.

**{¶ 55}** Galluzzo did not counter the Treasurer's evidence with any evidence under Civ.R. 56(E) to dispute that his taxes and related charges were delinquent or to question the accuracy of the stated amount. Rather, he relied on the argument that the Treasurer lacked the authority to institute any proceedings against him and that the trial court lacked jurisdiction to grant the Treasurer any relief. Galluzzo also has failed to bring to the attention of this court any provision of the Ohio Revised Code that would exempt him or his real property from the property tax liability imposed by Chapters 5709 and 323. Accordingly, we conclude that there was sufficient evidence in the record to allow the trial court to enter a judgment of foreclosure and to order a sheriff's sale of the property under R.C. 5721.18 and 5721.19.

**{¶ 56}** We also conclude that Galluzzo's theory that the Treasurer was attempting to collect taxes in violation of Article I, Section 10, clause 1 of the United States Constitution, is not supported by the law. "[T]he provision of Section 10, Article I of the

United States Constitution that '[n]o state shall * * * make any Thing but gold and silver Coin a Tender in Payment of Debts' is not a directive to states to use only gold or silver coins; it is merely a restriction preventing states from establishing their own legal tender other than gold or silver coins." *State ex rel. White v. Mack*, 93 Ohio St.3d 572, 573, 757 N.E.2d 353 (2001). "Article 1, section 8, clause 5 of the Constitution gives Congress the authority '[t]o coin Money, and regulate the Value thereof * * *.' This clause gives Congress the exclusive ability to determine what will be legal tender throughout the country." (Citations omitted.) *State v. Morgan*, 2d Dist. Clark No. 2294, 1987 WL 11809, *10 (May 28, 1987). 31 U.S.C § 5103 was enacted pursuant to Congress' authority, which provides that "United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues." Accordingly, the Treasurer's attempt to collect on Galluzzo's tax debts by cash, check, or bank check was not unconstitutional.

{¶ 57} The trial court did not err in granting summary judgment in favor of the Treasurer. Galluzzo's fourth assignment of error is overruled.

## VI. Conclusion

{¶ 58} Having overruled all of Galluzzo's assignments of error, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

EPLEY, P.J., and WELBAUM, J., concur.